[Civ. No. 8008. Third Dist. May 28, 1952.]

JOHN F. SMPARDOS, Respondent, v. PIOMBO CONSTRUCTION COMPANY, INC. (a Corporation) et al., Appellants.

Frank H. McAuliffe and Loyd E. Hewitt for Appellants.

Goldstein, Barceloux & Goldstein and F. R. Crable for Respondent.

SCHOTTKY, J. pro tem.—Plaintiff brought this action to recover possession of real property and for damages. It was alleged that plaintiff was the owner and entitled to possession of certain mining property located in Plumas County; and that on or about May 1, 1948, defendants entered upon the premises and ousted the plaintiff therefrom. Damages were asked as follows: $100 per day during the wrongful possession; $50,000 for waste; $100,000 exemplary damages. The jury returned a verdict for plaintiff in the sum of $25,600 actual damages, and $17,400 exemplary damages.

Defendants made a motion for a new trial, and the court ordered that a new trial be granted unless plaintiff consented that the amount of compensatory damages be reduced to $15,000 and the amount of exemplary damages be reduced to $12,000. Plaintiff filed his consent to such reduction and the motion for a new trial was denied. Defendants have appealed from the judgment and from the order denying their motion for a new trial.

Defendants and appellants attack the judgment upon two main grounds: (1) That the evidence is insufficient to sustain the damages awarded; and (2) that the court committed prejudicial error in excluding certain evidence offered by them.

Before discussing these contentions we shall summarize briefly the factual situation as shown by the record, bearing

in mind the familiar rule that conflicting evidence must be construed in the light most favorable to the respondent.

Respondent acquired the mining claim consisting of approximately 10 acres of patented land and 50 acres of unpatented land on November 14, 1947, by quitclaim deeds executed by W. M. Cleaveland and Lena Cleaveland, his wife. Plaintiff thereafter paid taxes on the property and filed proof of labor on the unpatented land. The plaintiff performed considerable work on the claim. He used a bulldozer to dig a trench across the lower bar in order to pick up the old channel and to remove overburden. A road was built into this trench. Other work consisted of a roadway into the premises, construction of a cabin at a cost of $1,000, and construction of a sediment basin and sluice box.

The appellants were engaged in reconstructing a portion of the Feather River Highway. They moved upon portion of the premises in question early in May, 1948, during the absence of respondent, using some six acres of the unpatented land for a construction and maintenance yard and office. Respondent first learned that appellants had occupied the premises upon his return on May 15, 1948.

The appellants leveled a portion of the premises, constructed a powder magazine, and used the premises for general construction purposes. Appellants occupied the premises for 16 months.

There is evidence that appellants' operations injured the land. Considerable debris remained on the premises after appellants vacated. Oil spots were on the property which hamper mining operations. The leveling increased the overburden on portions of the property. Witness Grimes, a civil engineer, testified that approximately 3,000 yards of dirt had been placed on the upper bar, and that the removal cost would be $1,750. However, the issue of waste or permanent damages is of little importance upon this appeal as the only issue as to compensatory damages submitted to the jury was the reasonable value of the use of the land during the period of hostile occupancy.

Two licensed real estate brokers testified that the rental value of the premises was $1,600 per month during the period appellants were in possession. This figure was based upon the rental of the premises for trailer space. During the period involved there was a great demand for trailer space and cabin sites due to construction activities in the Feather River region.

Appellants contend that the testimony of rental income could not be used as a basis for damages for two reasons. First, the respondent testified that he intended to use the property for mining purposes, and therefore he could not mine the land and use it for trailer space at the same time. Secondly, appellants objected to the testimony on rental value upon the ground that there was "no showing that this particular property can be, or is, available for rental." In this connection, it is argued that the locator of an unpatented mining claim is only entitled to the use of the land for mining purposes. Appellants cite note 86 to title 30 U.S.C.A., section 26: "Possession of a mining claim in accordance with the provisions of this section confers the right on a locator to work such claim for precious metal, but confers no right to take timber or otherwise make use of the surface except as may be necessary for mining purposes." Also cited is *United States* v. *Rizzinelli*, 182 F. 675. In that case the defendants were convicted of operating a saloon within the limits of a national forest without a use permit. The court stated, page 682: ". . . [C]onsiderations pertinent to the construction of private grants and contracts clearly lead to the conclusion that the right of enjoyment which Congress intended to grant extends only to mining uses. The general purpose of the mineral laws is well understood; it was to encourage citizens to assume the hazards of searching for and extracting the valuable mineral deposited in our public lands"; and at page 684: "Holding, therefore, that the right of a locator of a mining claim to the 'enjoyment' of the surface thereof is limited to uses incident to mining operations, no serious difficulty is encountered in reaching the further conclusion that forest reserve lands embraced in a mining claim continue to constitute a part of the reserve, notwithstanding the mineral location, subject, of course, to all the legal rights and privileges of the locator. . . ."

Respondent distinguishes the Rizzinelli case upon the ground that it was a criminal action, and that a trespasser on the mining claim is not in the same position as the sovereign and holder of the paramount title. The precise holding of the Rizzinelli case was that a mining claim within forest reserve lands was subject to regulations and laws pertaining to the reserve in general, and that no exemption could be claimed by the locator or holder of the claim. Respondent also cites No. 85 to Title 30 U.S.C.A., section 26, which provides: "The exclusive right of possession given the locator

by this section carries the right to possession of the timber, soil, country rock, percolating waters, natural springs, . . . and every appurtenant belonging to the realty, and does not mean the right to use the surface for mining purposes only, but means an absolute sale when the terms and conditions are complied with." 58 Corpus Juris Secundum, page 113, provides: "Generally speaking the ground included within the boundaries of a valid location is withdrawn from the public domain and the right to its possession is vested exclusively in the locator during the period of his compliance with governing regulations."

We believe that as between the parties to this action respondent's use of the claim, including the use of the surface, was not limited to mining operations and the activities incidental thereto. As was said in *Watterson* v. *Cruse*, 179 Cal. 379, at page 382 [176 P. 870]: "While the paramount fee remains in the government until it has issued its patent, yet as to everything else 'the estate acquired by a perfected mining location possesses all the attributes of a title in fee, and so long as the requirements of the law with reference to continued development are satisfied, the character of the tenure remains that of a fee.' (2 Lindley on Mines, 3d ed., sec. 539; *Merritt* v. *Judd*, 14 Cal. 59; *Hughes* v. *Devlin*, 23 Cal. 501; *Buchner* v. *Malloy*, 155 Cal. 253 [100 P. 687].)" See, also, *Chittim* v. *Belle Fourche Bentonite Products Co.*, 60 Wyo. 235 [149 P.2d 142, 148].

We are not here concerned with a controversy between the holder of the paramount title, the United States Government, and the respondent, the locator of the mining claim, as to the extent of the respondent's right to the use of the said property. ▪ Under the authorities cited, the locator of a mining claim has the right to the exclusive use of the surface of said mining claim, and if someone else dispossesses him and makes use of the surface of said claim we see no escape from the conclusion that the trespasser is liable for the reasonable value of the use of said property, together with any other damage that said trespasser may have caused to the locator. If this were not so the locator's right to the possession of his claim would indeed be a precarious one.

▪ Appellants next contend that they were guilty of no acts which would entitle respondent to an award for exemplary damages. Under the provisions of section 3294 of the Civil Code, exemplary damages may be awarded where a defendant has been guilty of "oppression, fraud, or malice,

express or implied." Respondent did not contend at the trial, and does not now contend, that appellants were guilty of fraud, but respondent does contend that the actions and conduct of appellants toward respondent were both oppressive and malicious.

Appellants do not argue that the sum of $12,000, as modified by the court, is too high or that it is disproportionate to the compensatory damages, but only that no exemplary damages whatsoever should have been allowed.

Appellants argue that the evidence shows good faith on their part in that, when they selected the site for their yard and office, there was nothing to show the identity of respondent or the extent of his claims. They assert that the record shows that before entering the premises and leveling a portion of it, their superintendent consulted the U. S. Forest Service and the resident engineer of P.G.&E. and was assured by the Forest Service that P.G.&E., from whom appellants had already secured permission to enter, had control of the area. They state further that when respondent returned to the property on May 15, 1948, and asserted his claims, they suggested that he submit a lease to them for their consideration, but that after respondent had submitted a lease to them they refused to execute it because they were acting upon information which reasonably assured them that respondent had no rights in the premises. There is, however, evidence in the record to justify the conclusion that appellants entered the premises before they consulted the Forest Service, and it also appears from the record that there were three no-trespassing signs posted on the property with respondent's name and address written thereon; that respondent's deed to the property was of record in the office of the county recorder. The record shows further that appellants built and maintained a powder magazine within 200 feet of the respondent's cabin and removed it only after they had been ordered to do so by the court; that no toilet facilities were constructed for appellants' workmen who used the yard; that some of respondent's lumber near his cabin was run over and broken by appellants' tractors. The record shows further that on one occasion respondent was in his cabin and the following occurred:

"[MR. BARCELOUX] Q. What occurred? A. A bulldozer came rattling up the front walkway toward the cabin and I ran to the door, took a look at the bulldozer. It was coming right on up with the blade raised. So I picked up a shot-

gun, put some buckshot in it, stepped out on the porch. And the bulldozer kept right on coming so I pulled a bead on the operator, and he finally looked up and saw me with a shotgun so he abruptly stopped. I walked down to the side of the bulldozer, and the bulldozer did have 'Piambo Construction Company' painted on the side of it. . . . When he stopped, the blade was within six or eight inches either way of being exactly eight feet from the porch of the cabin.''

There is also evidence that on one occasion the general superintendent of appellants waved a hand in the direction of respondent's cabin and said, ''I am not going to give that ____ ____ ___ ____ a dime.''

In view of the foregoing, and of other evidence in the record, we are compelled to hold that the implied finding of the jury that appellants were guilty of both oppression and malice finds ample support in the record. It is fairly inferable from the record that appellants needed a site for their yard and headquarters, that they decided that the property in controversy was just what they wanted, and that they regarded respondent's claims and rights as of little importance. Even if they believed that respondent was occupying the property without any right to do so, they were hardly justified in acting as the record shows they did act in this case.

It is next contended that appellants should have been permitted to show that respondent was not the holder of the legal title to the property in question and that such title was held by Agnes M. Cleaveland.

Appellants offered the testimony of Mr. Clough given at the first trial and the certified copies of the records found by him in the recorder's office of Plumas County to show that plaintiff was not the owner, and as proof of abandonment. They contend that this testimony would show: (1) That Agnes M. Cleaveland was the true owner of the claim; (2) that she conveyed to P.G.&E. the patented portion on January 17, 1949, the unpatented portion on August 3, 1949, and assigned to P.G.&.E. on August 3, 1949, all causes of action with respect to said property; (3) that appellants obtained on September 18, 1950, a release from P.G.&E. from any and all claims arising out of their entry upon said land.

Respondent points out that appellants had no claim or right to the premises at the time of entry. The following appears at page 495 of the reporter's transcript:

"THE COURT: Is it your claim . . . that at the time you went in there that you had anything from the P.G.&E. or that the P.G.&E. had anything from Agnes Cleveland?

"MR. HEWITT [Counsel for appellants]: We don't claim that they had anything from Agnes Cleveland at the time we went in there. We claim that we had the right to go in there under the consent of the P.G.&E., first under their Power Withdrawal, and that the only person that could have complained of our going in there was Agnes Cleveland herself, because we claim that this defendant did not have possession and did not have title."

Appellants concede the following principle of law: (1) That defendant in a trespass action may not defend on the basis of title in a third person unless he can connect himself with that title; (2) title acquired after the commission of a trespass does not in and of itself afford a defendant any protection because the conveyance of the title does not constitute an assignment of prior causes of action.

Appellants argue, however, that by showing title in a third person, the damages to respondent's interest would have been restricted, and the possibilities of double recovery against appellants would not occur. They state in their brief:

"This proof of title in a party other than plaintiff would not in and of itself defeat plaintiff's entire cause of action, but it would force Smpardos to rely solely on possession. And the jury could properly conclude that Smpardos had *possession of nothing but the cabin, thereby confining the claim for damages to those rising out of alleged ouster of possession of the cabin.* In addition, the proof of title in a third party might help to bring the jury down to earth on the question of damages."

The cases cited to support these contentions hold that damages can only be awarded to the extent of the plaintiff's interest, i.e., damages upon proof of possessory interest only does not include an award for permanent injury to the freehold. The rule of these cases was followed by the trial court in the instant case. Under instructions to the jury respondent's claim to the premises and to damages rested upon proof of prior possession. The measure of damages applied was the value of the use of the property during the time it was occupied by appellant, which would be compensation for the possessory interest of the respondent.

It is undisputed that respondent was in the peaceful possession of the mining claim when appellants entered and

established their camp and headquarters. Respondent contends, correctly, that prior peaceful possession is sufficient to maintain the action of ejectment against one who enters as a trespasser. In *Lightner Min. Co.* v. *Lane*, 161 Cal. 689, 694 [120 P. 771, Ann.Cas. 1913C 1093], an action to recover damages for the removal of ore, the court stated: "It is a well-settled proposition that the proper party plaintiff in an action for trespass to real property is the person in actual possession. . . . A defendant who is a mere stranger to the title will not be allowed to question the title of a plaintiff in possession of the land." In 28 Corpus Juris Secundum, page 862, it is stated: "Title by adverse possession will support ejectment; and generally prior possession alone is sufficient as against a defendant who has no better right or title."

 We are of the opinion that upon the record in the instant case the court did not commit prejudicial error in excluding the records of transactions which occurred long after appellants had entered upon the property.

 Appellants contend, also, that they should have been permitted to show an abandonment of the property and that, during the period of abandonment, the lands were withdrawn by the federal government and set aside for power purposes. The appellants offered the testimony of L. L. Clough, an abstractor, that no proof of labor had been recorded to show that assessment work had been performed on the unpatented premises for a continuous period of 34 years, from 1914 to 1948, and that prior to the time respondent received deeds to the property the Federal Power Commission issued a permit to the P.G.&E. Company granting it the right to enter upon the unpatented land for power purposes. We do not believe that the court erred in sustaining the objection to this testimony or that appellants were prejudiced by its exclusion.

Proof of no assessment work prior to the purchase of the property would be insufficient in itself to show an abandonment, and failure to do assessment work has only the effect of throwing the ground open to location by another party, and where work is resumed, as here, before other rights intervene, prior failure to do assessment work is immaterial. 58 Corpus Juris Secundum states, page 137: "An original location may remain valid and not subject to forfeiture or relocation although the locator fails to perform the annual assessment work where he, his heirs, assigns, or legal repre-

sentatives enter and resume the necessary work before a third person makes a relocation.''

The power permit (Exhibit JJ) gave P.G.&E. rights to enter the premises for power purposes only, and such permit was not a grant in fee with the right in P.G.&E. to grant appellants permission to use the area as a maintenance yard. It appears from the record that most of the upper bar is and will remain above the flood line resulting from the dams constructed in the canyon.

No other points raised require discussion. In view of the foregoing the judgment and order are affirmed.

Adams, P. J., and Van Dyke, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 24, 1952.