[Civ. No. 16437. First Dist., Div. Two. Nov. 28, 1955.]

C. F. WATERS et al., Respondents, v. THOMAS LANIGAN
et al., Appellants.

James A. Walker and R. B. McMillan for Appellants.

Wyckoff, Parker, Boyle & Pope for Respondents.

KAUFMAN, J.—This is an appeal from a judgment for damages in the sum of $1,078 in favor of respondents C. F. Waters et al., and against defendants and appellants Thomas Lanigan et al., and the granting of an injunction prohibiting appellants from allowing livestock owned or controlled by them to trespass upon respondents' real property described therein.

Respondents C. F. Waters and Edna M. Waters filed a complaint alleging that Thomas and Margarita Lanigan wilfully and maliciously allowed their cattle to trespass upon

the real property in possession of respondents during the years 1952 and 1953. The case was tried by the court without a jury. The trial court found that (1) respondents at all times pertinent herein, were in possession of certain real property containing about 1,053 acres; (2) appellants wrongfully assumed the exclusive use and occupancy of said property for 1952 in allowing their livestock to trespass upon said property, to respondents' damage in the sum of $1,053, said property having a pasturage value of $1.00 per acre during that year; (3) appellants permitted occasional trespasses during 1953, and the grass consumed being of an indeterminate amount, nominal damage in the sum of $25 was suffered in that year; (4) respondents repeatedly returned said livestock to appellants during the years 1952 and 1953, and gave them notice to keep said livestock off the aforesaid property, but appellants continued to permit the trespasses.

Appellants contend that they did not wrongfully assume the use and occupancy of this property, known as the Stewart Ranch, for the year 1952, since they had entered into a binding contract with respondents for grazing privileges on the Stewart Ranch that year in exchange for respondents having similar rights on the Lanigan Ranch. If the alleged contract is found to be invalid, they say, still appellants' cattle were allowed to enter upon that property with the consent of respondents, hence a tenancy at will was created which was never properly terminated. Error is charged further in the refusal of the court to allow opinion testimony on rental value by appellant Thomas Lanigan, as he clearly possessed the necessary qualifications.

Respondents leased approximately 1,053 acres of pasture land in San Benito County from third parties, and used it for grazing cattle. This land, known as the Stewart Ranch, was contiguous to other pasture land owned by appellants. Consisting of parcels irregular in shape, they were joined together in several places. Between 1,150 and 1,160 acres of appellants' land were situated in the same field as the Stewart Ranch, and together they formed one big pasture. Not until August, 1953, was the boundary fenced. This was done by appellants at their own expense. Prior to that, cattle could roam freely from one property to the other.

For approximately five years prior to 1952 respondents had used the entire field for grazing purposes. For the first two years no payment was made, while for the next three

years respondents paid rent to appellants under a verbal lease. Appellants then kept their cattle on other land.

Appellants in November, 1951, notified respondents that when the lease expired on January 1, 1952, it would not be renewed, and respondents would have to remove their cattle to their own property. Respondents continued to seek a renewal of the lease, and on January 17, 1952, asked Richard Stevens, District Attorney of San Benito County, to arbitrate the difficulties between the parties. Respondents' cattle in the interim remained in the unfenced field. A meeting was held in Mr. Stevens' office on January 24, 1952. It is out of the conversations that occurred on that day in Mr. Stevens' office that appellants contend a contract was negotiated which, even if not valid, gave rise to a tenancy at will on the part of the appellants.

The conversations disclose that the parties at the time were anything but congenial. Appellant Mrs. Lanigan demanded that Waters remove his cattle from her land, but he refused, requesting a renewal of the lease which she refused because of the low rental he had been paying. Mr. Stevens suggested that they use the unfenced pasture land together, but Waters said he did not care to do anything like that. Mrs. Lanigan said she ought to be able to put 100 head of cattle upon the property to compensate for the feed which respondents' cattle had eaten since the lease expired on January 1, 1952, and that if respondents did not remove their livestock, appellants would turn theirs into the area. Appellants cite portions of the record to prove that an agreement was reached that appellants could run 40 head of cattle in the pasture. This testimony was given by Mrs. Lanigan, and it is claimed that it is uncontradicted and must be accepted as true.

However, Mr. Waters testified that Mrs. Lanigan said she would turn 100 head of cattle into the pasture, but he objected. Mrs. Lanigan stated at one point that Waters had said that appellants could put 15 cattle in the pasture, but she had said she would put in 100 on until she found out how many he had and until they were even. She said, "That was about all the conversation, and he would just sit there. He didn't say anything."

Mr. Stevens testified that Waters offered to allow appellants to run 15 head of cattle, but Mrs. Lanigan felt she was entitled to more, and threatened to put her cattle in unless Waters took his out. When asked if he recalled an agreement on that he said: "A meeting of the minds, no. It is my

recollection that Mr. Waters finally upped the amount of livestock that he would be willing to have Lanigans put into the area but I don't believe he ever arrived at the same number of head that Mrs. Lanigan felt she was entitled to put in, but she did tell him that in the event he didn't get his stock off she would put so many head of stock in there." There is no dispute as to the fact that respondents removed their cattle not long after the January 24th meeting, respondents stating the date as February 5, 1952, and appellants agreeing that it was in the month of February. Shortly after the meeting, appellants put their cattle into the unfenced field where they admit that they remained until November 1, 1952. Appellant Thomas Lanigan stated that 70 head were on the property in February and that the number decreased to around 50 in June, and to 35 in September and October. Waters testified that the number was in the 70's at all times, and sometimes higher. Appellants admit that respondents in February, 1952, and at other times during that year, demanded that appellants remove their cattle, but they refused.

The statement of the testimony of the parties as reviewed above is sufficient to answer appellants' first contention that the trial court was in error in finding that appellants wrongfully assumed the use and occupancy of the Stewart Ranch during 1952. Appellants cite numerous authorities to the effect that uncontradicted evidence of a witness which is not inherently improbable may not be disregarded by the trier of fact (*Dickenson* v. *Samples,* 104 Cal.App.2d 311, 314 [231 P.2d 530]; *Mantonya* v. *Bratlie,* 33 Cal.2d 120, 127 [199 P.2d 677]; *Wirz* v. *Wirz,* 96 Cal.App.2d 171, 176 [214 P.2d 839, 15 A.L.R.2d 1129]; *Dobson* v. *Dobson,* 86 Cal.App.2d 13, 14 [193 P.2d 794]), but these cases are clearly distinguishable. It is difficult to understand how appellants can claim that the testimony of Mr. Lanigan and Mr. Stevens is uncontradicted to the effect that an agreement was reached whereby appellants could put their cattle into the unfenced field in consideration for appellants allowing respondents' already present cattle to remain there, when Stevens definitely testified that there was no meeting of the minds, that the parties never arrived at the same number of cattle, that on the day of the meeting or a subsequent date he advised Waters to take his stock out of the pasture, since it was apparent that he could not keep them off the Lanigan place because of the condition of the fence. They point to testimony that Stevens said Waters agreed to 40 head being allowed into

the pasture, but appellants' own testimony is that they ran 70 head in the pasture in February, 1952. If they contend that an agreement had been reached as to 40, it is clear that they were not attempting to act under such contract when they immediately ran 70 head of cattle into the pasture. There is, of course, support in the evidence for the conclusion that no agreement was reached as to 40, since, although Stevens used the word "agreed" when referring to Waters' offer to allow 40, he had stated that the parties never arrived at the same number. Since there was no meeting of the minds, there was no contract.

It is argued that respondents by their conduct in not at once removing their cattle from the pasture, accepted appellants' offer to use the pasturage jointly. Twelve days after the meeting respondents removed their cattle. Lanigan admitted that Waters asked him to take his cattle out of there in February, 1952. Appellants' so-called offer was in the nature of a threat to put 100 cattle in the pasture. They show that there was a counteroffer on the part of Waters to permit 40, and that this is as high as he went, having started with 15. Because it took him 12 days in which to take action when appellants placed 70 head of cattle in the pasture, it cannot be said that the trial court was bound as a matter of law to conclude that this conduct was subject only to the inference that silence for that length of time was acceptance of an offer of joint use of the pasture. The trial court may well have concluded that that was a reasonable length of time for the making of a determination by respondents that the offer of 40 head had not been accepted, and that a counteroffer of 70 head would be rejected.

Appellant says that California cases have established that silence or inaction on the part of an offeree will be regarded as acceptance of an offer where the offeree is under a duty to speak, citing *Wood* v. *Gunther*, 89 Cal.App.2d 718, 731 [201 P.2d 874], but that case was concerned with relations between partners. The case pointed out that it was not a case of strangers, and to such persons she would have owed no duty to speak, but the offeree was one of three fiduciary partners who had a contract with one another under which they owed duties, one to the other; consequently, silence constituted acceptance. *Meherin* v. *Meherin*, 93 Cal.App.2d 459 [209 P.2d 36], is also a partnership case. The remaining cases cited are clearly distinguishable from the case now before the court.

 Since no contract was entered into, and since we do not have a situation where the parties believed they had entered into a contract which for some reason was invalid, the entry of appellants' cattle was without consent, and therefore no tenancy at will arose. (*Blum* v. *Robertson,* 24 Cal. 127; *Norton* v. *Overholtzer,* 63 Cal.App. 388 [218 P. 637].)

It is contended that the trial court committed prejudicial error in ruling that Thomas Lanigan could not give his opinion as to the rental value of the Stewart Ranch in 1952. Respondents' objection that insufficient foundation had been laid was sustained. Appellants admit that whether or not a witness is qualified to express his opinion rests within the discretion of the trial court, and such ruling will be disturbed only where there has been an abuse of discretion. (*People* v. *Willis,* 30 Cal.App.2d 419, 423 [86 P.2d 670]; *Eubanks* v. *Milton G. Cooper & Son, Inc.,* 68 Cal.App.2d 366, 375 [156 P.2d 775].) They maintain that such an abuse of discretion was committed in this instance, for Thomas Lanigan had owned the ranch immediately adjacent to the Stewart Ranch since 1945, and 1,150 acres of the Lanigan Ranch were located in the same big field as the Stewart Ranch; he had been engaged in the cattle business since World War I; he had more than once rented land for grazing purposes; that although he had not rented property "in the vicinity" of the Stewart Ranch, he had rented property by the Jungle Inn which was "out in the valley more," and one of respondents' witnesses had previously testified that the Stewart Ranch was within hiking distance of the Jungle Inn. Thomas Lanigan also testified that in the spring of 1951 he had paid rent for pasturage on the Stewart Ranch itself.

The record shows that after stating that he had owned the ranch adjoining the Stewart Ranch since 1945, he testified he had had occasion to rent property for grazing purposes, but he was not asked when he had done so. He was then asked if he had ever rented property in the vicinity of the Stewart Ranch. He said, "No, I haven't. I have rented a small place by the Jungle Inn, but that's out in the valley more." Although appellant cites testimony given by another witness much ealier in the record that the Jungle Inn was in hiking distance of the Stewart Ranch, this was not called to the court's attention. A reading of the record clearly indicates that there was no abuse of discretion in holding that appellant was not sufficiently qualified as a rental expert.

In *People* v. *La Macchia*, 41 Cal.2d 738, 746 [264 P.2d 15], it is said that to qualify a witness to testify as to value of land it is only necessary to show " ' ' "that he has some peculiar means of forming an intelligent and correct judgment as to the value of the property in question . . . beyond what is presumed to be possessed by men generally." ' . . . The usual expert is qualified by proof of his familiarity with the property and with other property in the neighborhood, his experience in the business, his familiarity with the state of the market and of sales of similar property in the vicinity."

■ Since Lanigan was not an owner, he had to qualify as an expert on rental values, according to the standards set forth in the above quotation. Counsel for appellants should have brought out that Lanigan was generally familiar with fair rental values in the vicinity for pasture land of similar quality during the period of time in question.

Appellants say that the ruling was clearly unreasonable when the witness' qualifications are compared with those of Gerald Garner who testified as to rental value for respondents. However, the transcript reveals that the witness Garner was questioned in detail as to his fairly extensive operations on leased land in San Benito County for the past several years. The judge stated that he thought the witness had had enough practical experience in renting property but asked that he be questioned further as to the extent of his experience in renting "in this particular county and this area." After further questions by counsel, the court interrogated the witness at some length as to his experience in the general vicinity of the Stewart Ranch before allowing him to express an opinion on rental value. He then stated the value to be $1.00 per acre.

Appellants had an expert witness, a real estate broker, testify that the rental value of the Stewart Ranch was 50 cents per acre. In rebuttal, respondent Waters testified that the rental value was $1.50 per acre. The trial court found the value to be $1.00 per acre.

Even if it be assumed that appellant should have been permitted to express his opinion on rental value, in view of the fact that appellants had an independent expert testify on their behalf that the rental value was 50 cents per acre, and since they do not contend that appellant, an interested party, would have testified to a lower rental value, there appears to be no showing of prejudice. Therefore, as was said in *Vallejo etc. R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, 576 [147 P. 238], in a situation where other experts

had testified on the subject on which one witness had been excluded, and where it did not appear that qualified witnesses were difficult to obtain, "even if the ruling had been clearly erroneous, we cannot say that it was sufficiently prejudicial to warrant a reversal."

We conclude that no prejudicial error appears in the record before us and that the judgment finds ample support in the record.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.