[Civ. No. 14302. Third Dist. Aug. 30, 1974.]

GEORGE F. WILLIAMS, Plaintiff and Appellant, v.
EDITH GOODWIN, as Executrix, etc., et al.,
Defendants and Respondents.

## Counsel

Panattoni & Farrell, Carl D. Panattoni and Leonard C. Panattoni for Plaintiff and Appellant.

Leon McCaslin, Peters, Fuller & Rush and David R. Fuller for Defendants and Respondents.

## Opinion

**PUGLIA, J.**—Plaintiff appeals from a judgment of nonsuit rendered after the trial court entered orders granting the motions of each defendant for nonsuit and discharging the jury.

The disposition of this appeal requires the resolution of a question which to our knowledge has never received the attention of an appellate court in this state. The question to be determined is whether strict liability is imposed upon a defendant for personal injury inflicted upon a plaintiff on plaintiff's land by trespassing livestock in possession or control of defend-

ant. ██ For the reasons set forth *infra* we conclude that strict liability is imposed when plaintiff's injuries are such as might reasonably be expected to result from an intrusion by the kind of livestock involved.

The facts necessary to a consideration of the issues raised herein have been distilled from the record in the spirit of the rule governing appellate review of a judgment of nonsuit. ██ That rule requires the reversal of such a judgment when a review of the record yields substantial evidence which, if believed by the finder of fact, would justify a judgment in favor of the plaintiff. The reason for the rule derives from the allocation to the jury of the fact determination function except in those relatively rare cases where, as a matter of law, the plaintiff has not made out a case and would not be entitled to a judgment in his favor. (*McCall* v. *Otis Elevator Co.* (1963) 219 Cal.App.2d 22, 25 [33 Cal.Rptr. 44].)

On May 6, 1969, plaintiff George Williams, while working in his garden adjacent to his house trailer, was attacked, knocked down and trampled by a Black Angus bull, sustaining the injuries which prompted this action for damages. At the time plaintiff was employed upon a land development project by Sutherland Construction Company as a timekeeper and nightwatchman. All of the real property occupied or used by plaintiff and defendants or otherwise concerned in this action is located in Tehama County and, at the time of the incident in suit, was owned by River Lakes Ranch Development Corporation and Macco Corporation, hereinafter referred to collectively as the "developers."[1] Plaintiff's employer was engaged on behalf of the developers on a construction project on the property.

The developers had purchased a parcel of real property of approximately 7,200 acres from Dr. Price, since deceased.[2] Thereafter the developers, extended grazing rights on portions of the property to the Price estate in consideration for which the estate was obligated to remove the hay from and to keep cattle upon the property. The purpose of the latter consideration was to create a pastoral atmosphere, thus enhancing the attractiveness of the property to prospective purchasers. These rights were terminable by and subject to the right of the developers to control and develop the land. In turn the estate, through defendant Goodwin, and its ranch foreman, defendant Ghiglieri, entered into separate agreements with defendants Case and Ryan for the pasture of their cattle on the property at a rental fee of $5 per head per month. At the time of the attack on plaintiff approximately

---

[1] The developers are not now parties to this action having been dismissed as defendants on motion of plaintiff prior to trial.

[2] The defendant, Edith Goodwin, is the executrix of Dr. Price's estate and is sued herein in her representative capacity.

36 Black Angus bulls were contained in a single pasture pursuant to the rental agreements. One-half of the bulls belonged to defendant Case and the other half to defendant Ryan.

Plaintiff resided in a house trailer on land adjacent to this pasture. This trailer was located approximately 400 yards from another house trailer which served as the construction project office in which plaintiff did most of his work. Plaintiff's trailer had been placed upon the property by the developers for his use. He was permitted to live there and to plant and cultivate approximately one acre adjacent to the trailer as a vegetable garden. Plaintiff raised the vegetables for his own consumption and that of other employees on the project. The seeds were purchased by plaintiff who was reimbursed for the expense by the developers. At the time of the attack on plaintiff the garden was almost ready to produce its first harvest.

The garden area was intersected by a driveway leading to plaintiff's house trailer. The driveway provided access only to plaintiff's trailer and was used by him and by people who came to visit him. To facilitate irrigation of his garden, plaintiff had dug a trench across the driveway. The driveway was not used in moving cattle from one place to another.

The pasture containing defendants' bulls was separated from the land used by plaintiff by a fence in which there was a gate. Several times before the attack on plaintiff defendants' bulls had escaped through the fence. In some of these instances the bulls had gotten into plaintiff's garden. Plaintiff had notified the developers on these occasions and employees of the developers with plaintiff's assistance had returned the bulls to the pasture. On one such occasion an employee of the developers had repaired the fence through which the animals escaped.

On the evening of the attack plaintiff was working in his garden. As he was leaning on a garden hoe in the driveway next to his house trailer, he heard an animal hit the fence close by. Moments later a Black Angus bull charged plaintiff. Plaintiff attempted unsuccessfully to fend the animal off with the hoe. The bull knocked plaintiff down, trampled him and dragged him along the driveway as a result of which plaintiff sustained personal injuries. Finally plaintiff escaped to his house trailer and the bull retreated toward the gate in the fence enclosing the pasture. During the incident the bull invaded plaintiff's garden and damaged some plants. The following morning the gate was observed open and lying on the ground.

While the complaint is not included in the record on appeal, it appears that plaintiff alleged liability on two theories, namely negligence and strict liability for injuries inflicted by animals of dangerous propensities actually or constructively known to the possessors thereof. At trial, without objec-

tion by the defendants, plaintiff expanded his theories of liability to include strict liability for damage by trespassing livestock.

In ruling on the motion for nonsuit the trial court found the evidence of negligence and known dangerous propensities insufficient to submit the question of liability to the jury on either of those theories. In considering plaintiff's third theory of liability the trial court assumed without deciding that a defendant in control of livestock is strictly liable for a plaintiff's personal injuries inflicted by the livestock as a consequence of a trespass upon land possessed by plaintiff. Nonetheless the trial court was of the view that the evidence was insufficient to show that the plaintiff "was within the scope of the type of person who is protected" by the above stated rule. The trial court further observed, "I don't think that Mr. Williams is the person that is indicated as having a right of recovery on the basis of strict liability for trespassing cattle, because I don't believe he fits in the category of a possessor of land . . . and the evidence, looking at it most favorably to Mr. Williams, I feel does not support that theory of the case. . . . [¶] This was, after all, a small portion of a very large land holding. I don't believe he had the right of exclusive occupancy of the area where he was living. The accident occurred, if it did occur, on the driveway, and, as a matter of fact, I think if they wanted to drive the whole herd of cattle through there they had that right and authority to do so."

## I

As previously stated, the first question to be resolved in this appeal appears to be a matter of first impression in this state to the extent that it involves the applicability of the common law rule of strict liability for personal injury, as distinguished from property damage, caused by trespassing livestock.

The doctrine of strict liability for harm done by animals has developed along two separate and independent lines: (1) Strict liability for damages by trespassing livestock,[3] and (2) strict liability apart from trespass (a) for damages by animals of a species regarded as inherently dangerous,[4] and (b) for damages by animals of a species not so regarded but which, in the

---

[3]The Restatement of Torts identifies specific types of animals such as cattle and horses within the livestock category and generally defines the category as consisting of all animals "normally susceptible of confinement within boundaries without seriously impairing their utility and the intrusion of which upon the land of others normally causes harm to the land or to crops thereon." (Rest., Torts, § 504, subd. (1), com. (a); see also Prosser, Law of Torts (4th ed. 1971) pp. 496-497.)

[4]Cattle consist of species which are not regarded as inherently dangerous. (Prosser, Law of Torts, *supra,* p. 500; Harper & James, Law of Torts (1956) p. 835.)

particular case, possess dangerous propensities which were or should have been known to the possessor.[5] (Prosser, Law of Torts (4th ed. 1971) pp. 496-503; Harper & James, Law of Torts (1956) pp. 821-845.)

By common law the owner of cattle was required to keep them confined to his own close and, it was said, was liable in damages irrespective of negligence or fault for all injuries resulting from their being permitted to range at large. (Prosser, Law of Torts, *supra,* pp. 496-497; Harper & James, Law of Torts, *supra,* pp. 821-822; see also *Hahn* v. *Garratt* (1886) 69 Cal. 146, 149 [10 P. 329].) Historically, the possessor of wandering livestock was so identified with his cattle that their trespass was regarded as his own and liability was assessed as if the defendant had trespassed in person. (Prosser, Law of Torts, *supra,* p. 496; Harper & James, Law of Torts, *supra,* p. 822.) The Restatement of Torts pays obeisance to this ancient fiction in defining the liability of a possessor of trespassing livestock as coextensive with his liability for "intentionally" driving his cattle on another's land. (Rest., Torts, § 504, subd. (1), com. (e).)[6]

The historical rationale of the doctrine of strict liability for livestock trespass has largely been abandoned. The foundation of such liability currently is variously ascribed to defendant's possession and power of control of the animals (Prosser, Law of Torts, *supra,* pp. 496, 498), and the practical consideration that one raising livestock for his own use and profit should bear the burden and expense incident to their ordinary and predictable wanderings. (Harper & James, Law of Torts, *supra,* p. 822.) .

The common law rule was abrogated in the first session of the California Legislature by an enactment (commonly referred to as a "fencing out" statute) which required the plaintiff to maintain a proper fence around his land

[5]The notice of the character of the particular animal which is required in the latter situation is known as "scienter."

[6]In the tentative draft of the Restatement Second, comment (e) is deleted and explicit comparison of livestock trespass with the possessor's intentional trespass is avoided. Instead the possessor of trespassing livestock is said to be "subject to liability as though he had committed the trespass himself." Liability is to be determined in accordance with the rules stated in sections 162 and 163 (Rest. 2d Torts, § 504, subd. 2, com, (f) (tentative draft, 1964).) Sections 162 and 163 of the Restatement Second of Torts provide as follows: Section 162: "A trespass on land subjects the trespasser to liability for physical harm to the possessor of the land at the time of the trespass, or to the land or to his things, or to members of his household or to their things, caused by any act done, activity carried on, or condition created by the trespasser, irrespective of whether his conduct is such as would subject him to liability were he not a trespasser." Section 163: "One who intentionally enters land in the possession of another is subject to liability to the possessor for a trespass, although his presence on the land causes no harm to the land, its possessor, or to any thing or person in whose security the possessor has a legally protected interest."

as a precondition to recovery for trespass by livestock. (Stats. 1850, ch. 49, p. 131; *Davis* v. *Blasingame* (1919) 40 Cal.App. 458 [181 P. 104]; *Broady* v. *Jennings* (1925) 70 Cal.App. 647 [234 P. 120]; see also Prosser, Law of Torts, *supra,* pp. 497-498.) Gradually, as conditions within the state changed, the common law rule was by statute restored to designated areas of the state. (*Hahn* v. *Garratt, supra,* 69 Cal. 146; *Blevins* v. *Mullally* (1913) 22 Cal.App. 519 [135 P. 307]; *Hicks* v. *Butterworth* (1916) 30 Cal.App. 562 [159 P. 224].) The Estray Act of 1915 (Stats. 1915, ch. 397, p. 636) repealed all so-called "fencing out" laws in the state and restored the common law rule throughout except in the six northernmost counties which were specifically exempted from the operation of the statute. (*Montezuma Improvement Co.* v. *Simmerly* (1919) 181 Cal. 722 [189 P. 100].) The successor provisions to that act are now found in sections 17001 to 17128 of the Food and Agricultural Code[7] essentially unchanged insofar as they bear upon the issues of this case. By virtue thereof, the common law rule remains applicable throughout the state, except in those counties or parts thereof devoted chiefly to grazing (see § 17122) which counties and areas are specifically identified in section 17123. Neither Tehama County, the site of this occurrence, nor any part thereof, is specifically identified as devoted chiefly to grazing.[8]

A number of California decisions subsequent to the statutory restoration of the common law rule have recognized the applicability of the doctrine of strict liability for damage by trespassing livestock to crops, pasture or feed. (*Hahn* v. *Garratt, supra,* 69 Cal. 146; *Blevins* v. *Mullally, supra,* 22 Cal.App. 519; *Hicks* v. *Butterworth, supra,* 30 Cal.App. 562; *Montezuma Improvement Co.* v. *Simmerly, supra,* 181 Cal. 722; *Davis* v. *Blasingame, supra,* 40 Cal.App. 458; *Moran* v. *Freeman* (1920) 48 Cal.App. 514 [192 P. 155]; *Ushirohira* v. *Stuckey* (1921) 52 Cal.App. 526 [199 P. 339]; *Huffman* v. *Coulter* (1921) 55 Cal.App. 173 [203 P. 125]; *Waters* v. *Lanigan* (1955) 137 Cal.App.2d 268 [290 P.2d 370].)

Defendants do not dispute the continuing viability of the foregoing authorities. They contend, however, that even if a right of action for trespass

---

[7]All section references hereafter are to the Food and Agricultural Code.

[8]Section 17124 provides that the board of supervisors of any county may by ordinance declare that such county or any part of such county is devoted chiefly to grazing. The effect of such an enactment is the abrogation of the common law rule and the substitution therefor of a "fencing out" law in the area affected. (§§ 17121, 17122, 17123, subd. (d).) The parties tried the case on the supposition that the common law rule applied at the locus of the incident. In ruling on defendants' motion for nonsuit the trial court assumed that the common law rule applied in Tehama County and there was no evidence that the Tehama County Board of Supervisors had enacted such an ordinance as is authorized by section 17124.

in the plaintiff were here shown (a proposition they do not concede), the imposition of strict liability would be inappropriate because the injury sustained by plaintiff is not within the scope of the risk created by the trespass.

Section 504, subdivision (1), of the Restatement of Torts purports to set out the common law rule as follows: "[A] possessor of livestock which intrude upon the land of another is liable for their intrusion and for any harm done while upon the land to its possessor or a member of his household although the possessor of the livestock exercised the utmost care to prevent them from intruding."

The law defining the scope of liability for trespassing livestock has been summarized by one authority as follows: "In general, strict liability has been confined to consequences which lie within the extraordinary risk whose existence calls for such special responsibility. [¶] Thus the owner of trespassing animals has been held strictly liable for consequences of the trespass which were reasonably to be expected from an invasion by animals of the particular kind—including, of course, damage to crops, attacks upon other animals, infecting them with disease, or the misalliance of a scrub bull with a pedigreed heifer. The same has been true of personal injuries suffered by the owner in an attempt to put the animal out, which has been regarded as foreseeable, reasonably likely to occur, and to provoke resistance. On the other hand, there are several cases denying recovery for injuries from quite unprovoked attacks, on the ground that they could not reasonably be expected to follow from the trespass. . . . In general, the cases support the view that the defendant will be liable only for normal consequences of the trespass, lying within the risk, which will vary with the type of animal involved, and may often be a jury question." (Prosser, Law of Torts, *supra,* p. 518.) (Fns. omitted.)

As there are no California cases in point, our attention has been directed to decisions from other jurisdictions in which strict liability has been imposed for personal injuries caused by trespassing livestock without a showing of negligence, fault or dangerous propensities and scienter.

In *Troth* v. *Wills* (1898) 8 Pa.Super. 1, plaintiff, living temporarily with her son, attempted to drive defendant's straying cow from her son's garden. The cow suddenly turned and butted her, causing her injury. In affirming judgment for plaintiff, the court found the injury to plaintiff so closely associated with the primary trespass that it constituted a substantive part and, accordingly, an aggravation thereof since the injury was one which such an animal is naturally disposed to commit on being disturbed while feeding.

In *Wormald* v. *Cole* [1954] 1 Q.B. 614 [1 All.E.R. 683] (C.A.), defendant's cattle escaped their enclosure and trespassed on plaintiff's land. While trying to prevent their entry into her garden, plaintiff was knocked down and trampled by a heifer which had become separated from and was attempting to rejoin the others. In separate concurring opinions, the three judges agreed that an occupier of land may recover for injuries which were the natural and ordinary consequence of a trespass, that is, for damages caused by an animal acting in accordance with its normal and natural propensities. It appeared that the heifer, impelled by its natural, gregarious instinct, collided with the plaintiff fortuitously and not as the result of a vicious attack. Accordingly, the court held that the damage was not so remote as to preclude recovery by plaintiff.

In *Robinson* v. *Kerr* (1960) 144 Colo. 48 [355 P.2d 117, 88 A.L.R.3d 705], plaintiff, a seven-year-old boy, was kicked and injured by defendant's wandering horse while attempting to drive it off his grandfather's property. In reversing a directed verdict for defendant, the Supreme Court of Colorado held that plaintiff had made out a prima facie case of trespass *quare clausum fregit* by proof of the foregoing facts.

In *Nixon* v. *Harris* (1968) 15 Ohio St.2d 105 [44 Ohio Ops.2d 78, 238 N.E.2d 785], defendant's cow crossed the fence into a field owned by plaintiff's father. When plaintiff attempted to drive her back to her own pasture, the cow charged, gored and injured him. The Supreme Court of Ohio held that in such an action of trespass *quare clausum fregit* defendant was strictly liable for the injury to plaintiff.

The cases just reviewed are numerically inferior to the large number of decisions upholding the imposition of strict liability for property damages by trespassing livestock.[9] Nonetheless they cannot be dismissed as inexplicable aberrations from settled principles. Rather, they are consistent with established authorities in that they share in common the underlying rationale for recovery when the plaintiff's injuries are inflicted as the direct result of a trespass and are of a kind which could reasonably have been anticipated under all the circumstances including the type of animal involved. Indeed, it is upon this ground that defendants seek to distinguish the fore-

---

[9]See cases collected in Prosser, Law of Torts, *supra,* pages 496-498, 518. There is a line of New York cases imposing strict liability for personal injuries inflicted by trespassing livestock. (*Marsh* v. *Hand,* 120 N.Y. 315 [24 N.E. 463] (plaintiff attacked and injured by defendant's ram); *Malone* v. *Knowlton,* 15 N.Y.S. 506 (plaintiff attacked and injured by defendant's bull); *Warsevecz* v. *Mills,* 258 App. Div. 846 [15 N.Y.S.2d 687] (plaintiff attacked and injured by defendant's bull).) None of the foregoing decisions discusses the scope of risk as a potential factor limiting liability. (Cf. *Dufer* v. *Cully,* 3 Ore. 377.)

going cases from the instant situation, pointing out that in the trespass cases imposing strict liability for personal injury, plaintiff's injuries were inflicted during an effort to expel the trespassing animal from the land, thereby stimulating the animal's natural propensity to resist. Defendants seek to distinguish the attack on plaintiff, however, characterizing it as a chance, unpredictable and unprovoked attack outside the scope of the risk delimiting defendants' liability and consequently uncompensable in the absence of proof of negligence or dangerous propensities and scienter. Analytically, the distinction urged focuses upon the lack of an affirmative act by plaintiff to interdict the trespassing animal. In the absence thereof it is contended that attack by defendants' bull was unnatural, aberrant and too far attenuated from the primary trespass to warrant imposition of liability. The question is thus presented whether the existence of the risk of personal injury as a consequence reasonably to be anticipated of trespass by livestock is an exclusive function of the interaction between the animal's natural reaction to plaintiff's predictable effort to protect his property.

The conclusion is inescapable that the entry of defendants' animal upon the property used by plaintiff portended two conceivable consequences, each of which was reasonably predictable from the intrusion of a bull upon occupied land under cultivation. To recite the obvious, the growing crops were exposed to depredation and the personal security of persons upon the property was imperiled.

The plaintiff had virtually no opportunity to expel the animal or defend his property much less to retreat to a haven of safety or, failing that, to defend himself. He testified that after working in his garden he was leaning on a hoe and relaxing in the middle of his driveway. He heard an animal hit the fence close by but paid no attention to it. A second or two later he heard the sound of running, turned around and saw the bull a few feet away running right at him. Plaintiff hit the bull with the hoe which broke upon impact. He was immediately knocked to the ground.

 The sequence of events from entry upon the land to attack upon plaintiff, without interposition of any independent operative agency, compels the conclusion that plaintiff's injuries were the direct consequence of the trespass. Moreover, to conclude under these circumstances that an attack such as occurred with resulting injury was not reasonably to be expected would require a departure from logic. The manifest danger that inheres in exposure of the person to the immediate presence of an uncontrolled bull is strongly suggested by human experience and common sense.[10] Thus, it is of no significance that defendants' bull did not pause

---

[10] The tentative draft of the Restatement Second of Torts limits liability for harm by trespassing livestock to that "which might reasonably be expected to result from

to forage plaintiff's crop either before the attack, after the attack, or at all, or that plaintiff's injuries were not sustained in the course of an effort to expel the animal or to protect his property.

We hold therefore that the infliction of personal injury by a bull upon an occupier of land, as the direct result of trespass by the bull upon that land, is within the scope of the risk of harm created by the trespass because it is obviously predictable and reasonably to be expected as a result of such a trespass. The rule expressed is consonant with the commonly acknowledged purpose of the application of strict liability to such cases, i.e., to allocate the burden of harm, in circumstances where damage of some sort is virtually inevitable, to the one having possession and control of the animal. (Prosser, Law of Torts, *supra,* p. 498.)

Defendants cite the cases of *Leipske* v. *Guenther* (1959) 7 Wis.2d 86 [95 N.W.2d 774, 96 N.W.2d 821]; *Harvey* v. *Buchanan* (1904) 121 Ga. 384 [49 S.E. 281]; and *Klenberg* v. *Russell* (1890) 125 Ind. 531 [25 N.E. 596], in support of their contention that a sudden unprovoked attack by a trespassing animal such as shown by the record here is outside the scope of the risk which calls for the imposition of strict liability. *Klenberg,* however, did not involve a trespass to land and the trespass in *Leipske* was of such a technical nature that the court expressly limited the ruling to the facts of that case. Liability was not imposed in the *Harvey* case because the conduct of defendant's mule was not that expected of the ordinary mule. Therefore, defendants' reliance on these authorities is inapposite. Defendant Ryan's reliance on the cases of *Talizin* v. *Oak Creek Riding Club* (1959) 176 Cal.App.2d 429 [1 Cal.Rptr. 514], and *Mann* v. *Stanley* (1956) 141 Cal.App.2d 438 [296 P.2d 921], is similarly misplaced in that neither of these cases involved a trespass upon land.

## II

The next question to be determined is whether the plaintiff proved a sufficient interest in the property upon which the incident occurred to maintain an action for trespass in his own right. As previously pointed out, the trial court was of the view that plaintiff had not shown possession or occupancy of a character sufficiently substantial to invest him with a right

the intrusion of such an animal." (§ 504, subd. 2.) Comment (g) (§ 504, subd. 2) declares: "In determining whether particular harm . . . to the person of the possessor or of members of his household, is of a kind which might reasonably be expected to follow from the trespass, account must be taken of the natural propensities of the particular kind of animal. Thus any trespassing bull may be expected to attack and gore any other animal, or any person who gets in his way."

of action for trespass. It was upon this explicit ground that the trial court based its grant of the motion for nonsuit.

The Restatement extends the benefit of the strict liability-trespass doctrine to the possessor of the land or a member of his household. (Rest., Torts, *supra,* § 504, subd. (1).)[11] ▮ It is well settled that the person in actual possession is a proper party plaintiff in an action for trespass to real property. (*Whittaker* v. *Otto* (1967) 248 Cal.App.2d 666, 672 [56 Cal.Rptr. 836]; *Smpardos* v. *Piombo Construction Co.* (1952) 111 Cal. App.2d 415 [244 P.2d 435]; *Lightner Mining Co.* v. *Lane* (1911) 161 Cal. 689 [120 P. 771].) ▮ In an action of trespass upon real property plaintiff must prove the fact of his possession of the premises, but his right to possession is not involved unless defendant tenders an issue thereon. (*Pollock* v. *Cummings* (1869) 38 Cal. 683, 685.)

Defendants do not challenge plaintiff's right to live upon or cultivate the land. Rather, they contend that plaintiff's relationship to the land was of a character so vagrant as not to confer upon him a right of action for trespass.

We find the case of *Fisch* v. *Nice* (1909) 12 Cal.App. 60 [106 P. 598], instructive upon the question under consideration. In that case the issue before the court involved the interpretation of a statutory provision conferring a right of recovery for trespass upon the "owner of or person who is in the lawful possession of land" trespassed upon by defendant's animal. (*Id.* at p. 62.) The court held that the words "lawful possession" as contained in the statute meant only " 'peaceable or quiet possession, contradistinguished from possession which is not merely constructively tortious, but actually so.' [Citation.]" (*Ibid.*) The court declared that plaintiff's burden under the statute was satisfied by a showing of actual possession. (*Id.* at p. 63.)

▮ The word "occupation" is synonymous with the word "possession" and connotes a subjection of property to one's will and control. (*Lawrence* v. *Fulton* (1862) 19 Cal. 683; *McKenzie* v. *Brandon* (1886) 71 Cal. 209 [12 P. 428].) ▮ Actual possession is usually evidenced by occupation, by substantial enclosure, by cultivation or by appropriate use according to the particular locality and quality of the property. (*Coryell* v. *Cain* (1860) 16 Cal. 567, 573.) The construction of an enclosure, however, is not necessary to establish possession. It is merely evidence tending to show possession. (*Horton* v. *Moore* (1918) 38 Cal.App. 623 [177 P. 188].)

---

[11]In this respect the tentative draft is unchanged (Rest. 2d Torts (Tent. Draft, 1964) § 504, subd. 2).

Whether plaintiff's relationship to the land amounts to possession within the meaning of the foregoing principles is a question of fact to be determined by the jury (*O'Banion* v. *Borba* (1948) 32 Cal.2d 145 [195 P.2d 10]; *Walner* v. *City of Turlock* (1964) 230 Cal.App.2d 399 [41 Cal.Rptr. 29]; *Brumagim* v. *Bradshaw* (1870) 39 Cal. 24), unless it can be said as a matter of law that the evidence upon that issue is palpably insufficient to support a verdict for plaintiff. (*O'Keefe* v. *South End Rowing Club* (1966) 64 Cal.2d 729 [51 Cal.Rptr. 534, 414 P.2d 830, 16 A.L.R. 3d 1]; *McCall* v. *Otis Elevator Co., supra,* 219 Cal.App.2d 22.)

The propriety of the trial court's ruling in taking the case from the jury must be tested by the stringent rule relating to nonsuit. The rule is that " '[A] nonsuit may be granted only where, disregarding conflicting evidence on behalf of the defendants and giving to plaintiff's evidence all the value to which it is legally entitled, therein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff.' " (*O'Keefe* v. *South End Rowing Club, supra,* 64 Cal.2d 729, 733; *McCall* v. *Otis Elevator Co., supra,* 219 Cal. App.2d 22, 24-25.)

Thus, we consider the evidence of plaintiff's possession of the land. Viewed in the light most favorable to plaintiff, the record discloses that the developers, owners of all the land involved herein, located plaintiff's house trailer on the property for his use, secured the necessary permits from the health authority to install a sewer connection, allowed plaintiff to live in the trailer convenient to the site of his employment on the developer's construction project and permitted him to cultivate a vegetable garden adjacent to his trailer for his benefit and that of other employees on the project. At the time of the incident plaintiff had occupied the land long enough that the first crop was nearly ready to be harvested. The driveway upon which the attack occurred intersected plaintiff's garden and was used primarily by those seeking access to plaintiff's premises. Plaintiff had constructed an irrigation trench across the driveway. The driveway was not used for the movement of cattle. Defendants exercised grazing rights at the sufferance of the developer on its land adjacent to plaintiff's premises but separated therefrom by a fence. Defendants' grazing rights extended to a portion only of the developers' land and did not include land such as that on which plaintiff lived which was not in pasture. On several occasions prior to the incident, when defendants' cattle strayed into the plaintiff's garden, the developers' employees drove them off and back into the pasture. On at least one such occasion the developers' employees repaired the fence through which the cattle had escaped.

Applying to the foregoing evidence the rule of *Fisch* v. *Nice, supra,* 12 Cal.App. 60, we conclude that there was sufficient evidence of possession by plaintiff of the land upon which he was attacked to require the ultimate determination of that issue to be made by the jury. Accordingly, the trial court erred in granting the motion for nonsuit and the judgment must be reversed.

Defendant Ryan makes the additional contention that the judgment of nonsuit should be affirmed as to him for the reason that there was insufficient evidence of his possession or control of the herd of livestock of which the attacking bull was a member. At the hearing on the motion for nonsuit Ryan argued that he "wasn't even around at anytime at the time of the accident. He had nothing to do with facts surrounding the gate, if it was left open, or unlatched, or anything to do with any bolts [*sic*] being loose or let out, so all Ryan had to do with this was his bulls apparently had been delivered, and there was some evidence one of his—some of his bulls might have been in this pasture. No direct proof that his bull was the one that was involved, but even if it were, he had nothing to do with—there is absolutely no evidence he had anything to do with it getting out of the gate, if it did."

Ryan relies on the foregoing passage to satisfy the requirement that the motion for nonsuit must state the precise grounds upon which it is made with the defects in the plaintiff's case clearly and particularly indicated (*Timmsen* v. *Forest E. Olsen, Inc.* (1970) 6 Cal.App.3d 860 [86 Cal.Rptr. 359]), recognizing that grounds not specified in the motion will be considered by an appellate court only if it is clear that the defect is one which could not have been remedied had it been called to the attention of the plaintiff by the motion. (*Lawless* v. *Calaway* (1944) 24 Cal.2d 81 [147 P.2d 604]; *Markwell* v. *Sykes* (1959) 173 Cal.App.2d 642 [343 P.2d 769].)

We are unable to find in the quoted portion of Ryan's motion that minimum degree of clarity and specificity reasonably required to put plaintiff on notice that the sufficiency of his evidence is being challenged in the particular asserted by the defendant. Obviously, plaintiff's lack of response thereto is not determinative of the sufficiency of defendant's motion. Nonetheless, it is not surprising that plaintiff, in his argument in opposition to the motion, did not address the issue of Ryan's possession or control of the livestock. However, in fairness to defendant Ryan we note that after the parties had submitted the question the trial court in its ruling observed that it had "grappled with the question of who had control of these animals, and there is some doubt in my mind as to the liability of some of

the defendants for their lack of control, but I think that is moot, because I think the question is that he is not a possessor of land within the meaning of that section."

Nonetheless, we cannot say that the motion fairly comprehended the claimed deficiency in the evidence of Ryan's possession or control of the animals nor can we say that given fair notice thereof the plaintiff could not have met the issue successfully.

However, we are not compelled to dispose of Ryan's contention solely on the ground thus far considered since our examination of the record, particularly the testimony of the defendants, convinces us that the evidence of possession and control of the animals by Ryan was sufficient to go to the jury on that issue. Eighteen of the 36 bulls in the field adjacent to plaintiff's residence belonged to Ryan and were pastured on the ranch pursuant to an agreement made by Ryan with Ghiglieri and Goodwin. Ryan testified that he was seldom at the ranch. The testimony of Ghiglieri and Goodwin, however, discloses that Case and Ryan made the decision to pasture the bulls together and, with Ghiglieri, selected the particular field adjacent to plaintiff in which to graze them from among several pastures that were available.

The jury could conclude from the foregoing testimony that Ryan exercised a sufficient degree of control over the herd of livestock, of which the offending animal was a part, to subject him to liability for any trespass committed by the animals.

As previously indicated, the trial court ruled that the evidence of liability for negligence and for harm done by animals of known dangerous propensities was insufficient to go to the jury on either theory. In view of the indicated disposition of this appeal, it is unnecessary to deal with the contentions of the parties concerning this phase of the trial court's ruling. On retrial the plaintiff may proceed upon any or all theories of liability upon which the case was first tried. As to any theory of liability upon which the plaintiff fails to meet his burden the trial court should guide the jury's consideration thereof by appropriate instructions.

The judgment is reversed.

Richardson, P. J., and Regan, J., concurred.