[Civ. No. 3017.   Third Appellate District.—April 11, 1927.]

# EDWARD G. CRAMER et al., Respondents, v. REESE T. JENKINS, Appellant.

[1] TRESPASS — GRAZING SHEEP ON LANDS OF ANOTHER — PLEADING —ABSENCE OF PREJUDICE.—In this action for damages because of the trespass of defendant's sheep upon lands leased by plaintiffs, conceding that the complaint was defective in that there was no allegation that the premises were inclosed by a lawful fence, or that defendant wrongfully or unlawfully permitted the sheep to be herded upon the premises leased by the plaintiffs or permitted them to be grazed upon the premises leased by the plaintiffs, no demurrer having been interposed, and defendant not having been misled or suffered any prejudice on account thereof, such defects, under the provisions of section 4½ of article VI of the constitution, were not grounds for reversal of the judgment in favor of plaintiffs.

[2] ID. — HERDING OF LIVESTOCK — LAWFUL FENCE — STATUTORY CONSTRUCTION.—The act of May 11, 1919 (Stats. 1919, p. 464), relating to the herding of livestock upon the lands of another in the counties of Plumas, Lassen, and Modoc does not repeal any of the sections of the act of May 18, 1861 (Stats. 1861, p. 523) relating to the herding of sheep upon the lands or claims of another; and neither of said acts limits the application thereof to lands inclosed by a lawful fence, as specified by the act of 1855 (Stats. 1855, p. 154).

[3] ID. — VOLUNTARY HERDING ON LANDS OF ANOTHER — EVIDENCE — LIABILITY.—Whether premises are inclosed or uninclosed, if the owner of sheep, or of any livestock, has voluntarily done or permitted to be done any acts from which the trial court may conclude that said animals have, within the intent and meaning of either of said acts of 1861 or 1919, been herded or permitted to be herded upon the lands and premises of another, without such person's consent, the owner of the animals so herded or permitted to be herded is liable.

[4] ID.—HERDING SHEEP ALONGSIDE LANDS OF ANOTHER—KNOWLEDGE OF NATURAL INSTINCTS—FINDINGS—DAMAGES.—Where the owner of sheep places them alongside the lands and premises of another which are not sufficiently fenced to obstruct the free ingress or egress of said sheep, he must be held to have knowl-

---

1. See 2 **Cal. Jur.** 1011.
2. See 2 **Cal. Jur.** 35.
3. See 2 **Cal. Jur.** 38.
4. See 2 **Cal. Jur.** 39.

edge that said sheep, following their natural instincts, will proceed to graze the land and forage upon the lands of such other person, and, under such circumstances, a trial court is justified in finding that said sheep are being herded and are being permitted to graze upon the lands of such other person, in violation of said acts of 1861 and 1919; and where previous consent to so herd and graze said sheep is not obtained, the owner of said sheep is liable for the damage inflicted.

[5] ID.—SHEEP BEING HERDED—EVIDENCE—FINDING.—In this action for damages because of the trespass of defendant's sheep upon lands leased by plaintiffs, which lands were not inclosed by a sufficient fence to prevent the free ingress or egress of said sheep, the real question which the trial court was called upon to decide was whether said sheep so committing the trespass were sheep running at large upon the range or whether they were sheep being herded; and the testimony of one of defendant's herders in charge of said sheep at the time was amply sufficient to justify the finding of the trial court that the sheep were being herded and did not come within the classification of animals running at large upon the range. (Opinion on denial of rehearing.)

(1) 3 C. J., p. 147, n. 35; 4 C. J., p. 1170, n. 33. (2) 3 C. J., p. 127, n. 10. (4) 30 Cyc., p. 1462, n. 21.

APPEAL from a judgment of the Superior Court of Lassen County. H. D. Burroughs, Judge. Affirmed.

The facts are stated in the opinion of the court.

Barry & Barry for Appellant.

R. M. Hardy for Respondents.

PLUMMER, J.—Plaintiffs began this action to recover damages suffered by reason of trespass on lands leased by plaintiffs of certain sheep and cattle belonging to the defendant and recovered damages in the sum of $259.

The complaint is in three counts. No question is raised as to the judgment of the trial court awarding the plaintiff the sum of $34 on account of damages inflicted upon the premises leased to the plaintiffs by cattle belonging to the defendant. The argument of the appellant and all questions raised upon this appeal are directed to the alleged error of the trial court in awarding damages to the plain-

tiffs in the sum of $225 for pasturage destroyed upon the premises leased to the plaintiffs, by reason of the defendant permitting 600 head of sheep belonging to him to graze thereon.

The third count of the plaintiffs' complaint involved in this appeal, so far as pertinent hereto, is as follows:

"That on or about the 9th day of May, 1924, defendant permitted about six hundred ewes, together with lambs following them, to graze upon the SW. ¼ of said Section 9, without having first obtained the consent of said owner or of the tenants in possession, Edward G. Cramer and John C. Cramer."

The premises described are premises previously alleged in the complaint to be under lease to the plaintiffs. The damages recovered under this allegation are the sum of $225. No demurrer was filed by the defendant and no question as to the sufficiency of this allegation of the complaint appears to have been raised in the trial court. The answer of the defendant, so far as pertinent to the issues involved herein, contains the following:

"As a further, separate and distinct defense . . . , defendant alleges that on the 9th day of May, 1923, defendant, through his agents and employees, was driving a band of sheep owned by the defendant on lands not owned or controlled by the plaintiffs, bordering lands then owned by the Cramer Livestock Company, a corporation of the state of California, and leased by the plaintiffs; that said lands of plaintiff were fenced with a wire fence and that the wires of said fence were so high that sheep could easily pass thereunder; that while defendant was so driving his sheep on said lands not belonging to, or leased by the plaintiffs, about 600 head of ewes and lambs went under said fence and onto a corner of said lands leased by said plaintiffs."

It is further alleged that the defendant attempted to drive his sheep from said premises, but that said sheep were driven by the plaintiffs therefrom and placed in a corral by the plaintiffs.

Upon the basis of this allegation it is argued that as the testimony shows that plaintiffs' lands were not inclosed by a lawful fence, as described by an act of the legislature of 1855 (Stats. 1855, p. 154), no liability rests upon the de-

fendant for any injuries inflicted by his sheep upon crops growing upon the leased premises occupied and cultivated by the plaintiffs. Considerable testimony was introduced as to the character of the fence, constituting the inclosure of the plaintiffs' premises, sufficient to show that the fence so existing failed to comply in many particulars with the act of the legislature just referred to, but from the views herein expressed, the condition of the fence, or its failure to comply with the specifications set forth in the act of 1855, become immaterial.

The record shows that the plaintiffs and the defendant had leased from the Cramer Livestock Company adjoining premises; the plaintiffs leased premises suitable for cultivation, or which they were cultivating, the defendant had leased adjoining premises suitable for pasturage purposes, and which were being used by him for such purposes. The record shows that on or about the seventh day of May, 1924, the defendant's herders had herded and driven a band of sheep to and upon the premises adjoining the lands and premises belonging to the plaintiffs, and that while so doing, about 200 sheep passed under the fence in question on to the premises belonging to the plaintiffs, but the trial court held that no damage resulted from this incursion of the defendant's sheep. Following this, the record shows that on or about the ninth day of May, the herders employed by the defendant had in charge a band of sheep numbering some 1,200, brought them to within the vicinity of the plaintiffs' premises, where 200 from said band of sheep had made an incursion upon the lands leased by the plaintiffs two days previously; that the herders were moving said sheep over the premises leased by the defendant for pasturage purposes and in the direction of where the sheep might obtain water; that while so doing, about 600 of said sheep, in the language of the defendant's answer, "got away from the herders, went under said fence and onto the lands and premises leased and occupied by the plaintiffs," causing the damages found by the trial court. From this it is argued that the defendant is not liable on the ground, first: That the plaintiffs' premises were not inclosed by a lawful fence, and, second, that the court had nothing before it justifying a finding that the defendant permitted his sheep to graze upon the lands and premises leased by the

plaintiffs. The recital of the facts, as above set forth gleaned from the record, shows that the defendant was herding his sheep upon adjoining premises; that two days previous to the infliction of the damages ascertained and assessed by the trial court, 200 of said band of sheep passed under the fence in question and on to the leased lands occupied by the plaintiffs; that the herders went upon the lands and premises and drove the sheep from the lands and premises belonging to the plaintiffs, under the wire fence referred to in this action; that notwithstanding this knowledge of the condition of the fence thus acquired on the seventh day of May, 1924, the herders employed by the defendant brought the same band of sheep to the same vicinity, where 600 of them went under the same fence and inflicted the damage complained of.

We feel that these facts show that the defendant's herders had full knowledge of the condition of the fence, of the propensity of sheep to forage upon the lands of the premises and that when they voluntarily brought a large band of sheep to the same vicinity on the ninth day of May, 1924, the trial court was justified in finding that the defendant permitted said sheep to graze upon the lands and premises leased by the plaintiffs, within the intent of the act of the legislature herein referred to. Knowing the condition of the fence, knowing what the sheep had previously done, the defendant's herders voluntarily brought the defendant's sheep to the same vicinity. It has been held in this state that when a band of sheep is in charge of herders, the sheep are not considered as running at large. (*Spect v. Arnold,* 52 Cal. 455; 2 Cal. Jur., p. 47, sec. 31.)

[1] It is argued upon appeal for the first time that the complaint in this action does not state facts sufficient to constitute a cause of action, in that there is no allegation that the premises leased by the plaintiffs were inclosed by a lawful fence, or that the defendant wrongfully or unlawfully permitted the sheep to be herded upon the premises leased by the plaintiffs or permitted them to be grazed upon the premises leased by the plaintiffs. As stated, no demurrer was interposed to the complaint, and if technically insufficient as against a demurrer, the record, taken as a whole, shows that the defendant has not been misled or suffered any prejudice on account thereof and, therefore,

under the provisions of section 4½ of article VI of the constitution, it cannot be held grounds of reversal.

[2]   By the act of the legislature, approved May 18, 1861 (Stats. 1861, p. 523), it is provided as follows:

"It shall not be lawful for any person, or persons, owning, or having charge of, any sheep, to herd the same, or permit them to be herded, on the land, or possessory claims, of other than the land, or possessory claims, of the owners of such sheep."

This act contains four other sections, section 2 of which was amended by the act approved March 28, 1868 (Stats. 1867–68, p. 426). The amendment relates only to recovery of damages and does not limit or modify any of the language contained in section 1 of the act of 1861, which we have just quoted. By act, approved May 11, 1919 (Stats. 1919, p. 464), the legislature, in relation to the herding of sheep, further enacted (sec. 1):

"It shall be unlawful for any person or persons to herd or graze any livestock upon the lands of another in the counties of Plumas, Lassen and Modoc without having first obtained the consent of the owner or owners of the land so to do; provided, that the person claiming to be the owner of said lands has the legal title thereto, or an application to possess the same, with first payment made thereon."

This act does not purport to repeal any of the sections of the previous act of 1861, but is supplemental thereto in that, instead of being limited to the grazing or herding of sheep, it includes "any livestock," thus being broadened in its scope and not in conflict. The act of 1861 and the act of 1919 do not limit the application thereof, or of either of them, to lands inclosed by a lawful fence, as specified by the act of 1855, *supra.* [3]   Whether premises are inclosed or uninclosed, if there is anything in the case showing that the owner of sheep, or of any livestock, has voluntarily done or permitted to be done any acts from which the trial court may conclude that the livestock has, within the intent and meaning of either statute been herded or permitted to be herded upon the lands and premises of another, without such person's consent, then and in that case, the owner of the animals so herded, or permitted to be herded, is liable. Our attention is called to the case of *Logan* v. *Gedney,* 38

Cal. 579, as conclusive upon the questions involved on this appeal and necessitates a reversal of the judgment of the trial court. In that case the complaint was founded upon the act of the legislature of 1861, as shown by the opinion of the court, and alleged as follows: "Defendants wrongfully and wilfully permitted said sheep to be herded, and did herd the same upon the lands of which the plaintiff then was, ever since has been, and still is the owner." It was held by the court that the complaint was sufficient and that if the defendants had been guilty of the acts charged, a cause of action would have been stated, but that the evidence showed that the defendants' sheep without "their agency, knowledge or consent, while running at large at night, strayed into the plaintiff's barley field, which was not protected or inclosed by a lawful fence, or any sufficient fence to obstruct the free ingress or egress of sheep and hogs."

These facts readily distinguish the case of *Logan* v. *Gedney* from the case at bar. There the court held that the sheep strayed without the agency, knowledge or consent of defendants while running at large. In the case at bar the sheep were not running at large. They were being herded upon pasturage lands adjoining the lands and premises leased and occupied by the plaintiffs, were taken to the place from which they made their incursion upon the crops owned by the plaintiffs voluntarily by the defendant's herders, after knowledge acquired two days before of what the sheep would do, and what they might anticipate the sheep would do, which brings into operation the agency, knowledge, and practical consent which the court held wanting in the case of *Logan* v. *Gedney*. To hold that the owner of sheep may be permitted to drive his band of sheep and herd his band of sheep to and alongside the premises belonging to another, having knowledge of what said band of sheep had done two days previously is not, within the intent of the law, herding said band of sheep upon the premises of another, when 600 of said sheep brought in such close proximity to the premises of another, go upon such premises and proceed to graze, or are grazing without the permission, consent or agency of the defendant within the true intent and meaning of section 1 of the act of 1861, would be to hold that the act of the legislature is without force or vitality,

and all that a defendant has to do is to drive his sheep up to the line dividing his lands and premises from the premises of another, and then and there quit and abandon his duty as a herder and let the sheep wander at will. Such is not the meaning of either the act of 1861 or the act of 1919. [4] If the agency of the defendant places the sheep in that position alongside of the premises belonging to another, following their natural instincts, of which the owner of the sheep, or herder thereof, must be held to have knowledge, the sheep will proceed to graze the land and forage upon the premises of another, we think that, under such circumstances, the trial court is justified in holding that the sheep are being herded and are being permitted to graze upon the lands of another, in violation of the acts of the legislature which we have quoted, and that unless previous consent has been obtained so to graze the sheep belonging to him, the defendant, under such circumstances, is liable for the damages inflicted. The question of a lawful fence does not enter into this case.

In answer to the argument of counsel as to the meaning of the word "permit," it is sufficient to refer to 30 Cyc. 1461. Under the definitions there given, we find the following applicable to this case: "To allow or suffer to be done; to allow to be done by consent or by not prohibiting; to suffer or allow without prohibition or interference; to allow after notice or knowledge; to allow by silent consent or by not offering opposition or hindrance." Other definitions are given, but one of the above stated, to wit: "To allow after notice or knowledge" is pertinent here, as the defendant's agents had notice and knowledge of what might be expected from driving and herding the sheep to within such close proximity to the lands and premises owned by the plaintiffs.

The judgment of the trial court is affirmed.

Hart, J., and Finch, P. J., concurred.

A petition for rehearing of this cause was denied by the district court of appeal on May 11, 1927, and the following opinion then rendered thereon:

THE COURT.—The appellant on petition for rehearing herein calls attention to the fact that there is no testimony

supporting the finding of the trial court that the sheep committing the trespass alleged to have taken place on the seventh day of May, 1924, were the sheep belonging to the defendant and, also, that there is no testimony that the defendant knew of such trespass.

The trial court found that on or about the seventh day of May, 1924, the defendant Reese T. Jenkins, by his agents, representatives, and servants herded and grazed about 250 ewes and lambs upon the premises (described as belonging to the plaintiff) without first having obtained consent of such owner or of the tenants in possession.

The appellant's opening brief contains the following statement: ''There is absolutely no testimony to support the second finding that the defendant herded and grazed sheep upon plaintiff's lands, but as the court finds that there was no damage for his so-called trespassing, there is no use of discussing that point.'' The second finding above referred to is the finding of the court which we have just set forth. There being no further argument made by counsel for appellant upon said finding, we assumed that the finding was probably correct, but whether correct or incorrect, as no damages were awarded for that purpose, it became wholly immaterial. It is now argued, however, that because in the opinion heretofore filed in this cause by this court, we referred to the trespass committed on the ninth day of May, 1924, as having been committed by the same sheep, a rehearing should be granted, because it does not sufficiently appear that the same sheep committed the trespass, or that the sheep that committed the trespass on May 7th actually belonged to the defendant. While we referred to the trespass committed by the sheep on May 7th as being of the same band of sheep committing the trespass on May 9, 1924, for which damages were awarded, we attach absolutely no legal significance as to whether it was or was not the same band of sheep. We might state that a re-examination of the testimony would indicate that the findings of the court that the sheep committing the trespass on May 7, 1924, belonged to the defendant has but little to support it, and for the purposes of what we are about to state, it may be conceded that the finding is not supported by the testimony. It appears that the plaintiffs based their allegations of ownership and their conclusions as to the ownership of the band of sheep

committing the trespass on May 7th upon what a herder employed by the defendant had told them. This evidence was not admitted into the record. **[5]** The real question which the court was deciding was whether the sheep committing the trespass on May 9th were sheep running at large upon the range or whether they were sheep being herded. This question is so completely answered by one of the defendant's witnesses, who was one of the persons in charge of the sheep, that we will set it forth *verbatim*. It may be further stated that this testimony shows that the herder had knowledge of a trespass by the same sheep upon the same premises on two different occasions, when the damages were inflicted by the band of sheep. The testimony of the witness Urtsan, to whom we have referred, called by the defendant, testified as follows: "By Mr. Barry: Q. What is your name? A. Steve Urtsan. Q. You know Reese Jenkins? A. Yes. Q. You worked for him last year? A. Yes. Q. You know where the Cramer's place is out to Horse Lake? A. Yes sir. Q. Were you working out there in 1924? A. Yes sir. Q. What were you doing? A. Tending camp for Jenkins. Q. And did he have sheep out there? A. Yes sir. Q. Were you out there when he sheared? A. Yes sir. Q. Do you remember a bunch of those sheep getting in the Cramer field? A. Yes sir. Q. What time was that? A. I don't exactly know what day it was. Q. You know what month? A. It was in May. Q. Who was with the sheep when they got in the field? A. The herder and me. Q. And how many did you have? A. We had little over two thousand. Eleven hundred ewes and eleven hundred lambs. Q. You had about two thousand ewes and lambs? A. Yes. Q. Did some of them get away? A. Yes. Q. How many? A. I don't know how many altogether. Q. About how many? A. I seen a bunch go through into the field was about couple of hundred the way it looks to me. Q. What did you do when they got into the field? A. Went after them. Q. Were you with the sheep when they got in the field? A. Yes sir. Q. Did anybody come in from the Cramer ranch? A. Two men horseback. Q. Who were they? A. I don't know. I wasn't close enough. Q. What did you do with the sheep? A. Try to bring them back to the bunch but before I got there two fellows come on horseback and get there and take bunch and drive them home. Q. How far were they from

the fence when you first saw them? A. Inside you mean? Q. Yes. A. Two or three hundred yards. Q. What was you going to do with them? A. Take them back to the bunch. Q. Get them out of the field? A. Yes. Q. These fellows took them and drove them over to the house? A. Yes sir. Q. Were the sheep trying to graze or were they after water? A. They was trying for the water. They didn't look for feed at that time. Q. And if they had let you could you have got them out and got them to water? A. I don't understand. Q. If they hadn't taken them to the house what would you have done with them? A. Bring them back right away. We had water little ways from there. Q. You would have taken them over to the water? A. Yes. Q. Did any more sheep get away that day? A. Not out of that bunch. Q. Later, did any sheep get away and go in the field? A. Not later in that bunch. Q. Did you see anybody from the Cramer place any more that day? A. No sir. Q. Was that the only time any of the Jenkins sheep went under the fence? A. Before that bunch? The first bunch they took in the corral, I never saw that bunch. Q. They had taken a bunch that morning? A. Yes. Q. About what time of day was that when you were there? A. It was from twelve o'clock to half past twelve, something like that. Q. You were with the sheep, you and the herder? A. Yes. They had that bunch get away, the herder come to get his dinner.''

This testimony amply justifies the finding of the trial court that the sheep were being herded and did not come within the classification of animals running at large upon the range. In this we think the trial court did not err.

The petition for rehearing is denied.