[No. C048130. Third Dist. Oct. 3, 2005.]

JACK W. HERZBERG et al., Plaintiffs and Appellants, v.
COUNTY OF PLUMAS, Defendant and Respondent.

**COUNSEL**

The Zumbrun Law Firm, Ronald A. Zumbrun, Mark A. Teh, Matthew W. Kubicek and Kevin D. Koons for Plaintiffs and Appellants.

Barbara Thompson, County Counsel, and Brian L. Morris, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**CANTIL-SAKAUYE, J.**—Upset because their neighbor's cattle come onto their property, eating the vegetation, defecating, and trampling the ground and sensitive creek beds, plaintiffs sued their neighbors (the Wemples), the County of Plumas, and the Board of Supervisors of the County of Plumas (County) for trespass, nuisance, injunctive relief, taxpayer relief, declaratory relief, inverse condemnation, violation of civil rights and preemption by state law. Only plaintiffs' action against the County is at issue in this appeal. On appeal plaintiffs claim the trial court erred in entering judgment in favor of the County after sustaining the County's demurrer to each of the six causes of action alleged against the County without leave to amend. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 2, 1982, the Board of Supervisors of Plumas County adopted ordinance No. 82-490, amending title 9 of the Plumas County Municipal Code by adding chapter 6 regarding open range lands (the ordinance). The

ordinance created two areas of open range land, the Bucks Lake Area Open Range and the Last Chance Creek Open Range. (Plumas County Mun. Code, § 9-6.05.)[1] Pursuant to its authority under Food and Agriculture Code section 17124, the County declared such areas of land to be areas devoted chiefly to the grazing of livestock[2] and within those areas, no owner or rightful possessor of land had the right to take up an estray animal found upon his or her land, unless the land was entirely enclosed with a lawful fence.[3] The ordinance also gave the owner or rightful possessor of unfenced land within the designated open range the right to "a reasonable rental fee from any person who pastures livestock thereon." (§ 9-6.04, subd. (a).) The term " 'reasonable rental' " was defined "as at least AUM (values used for Williamson Act contracts in the area) or Forest Service lease fees in the allotment area, whichever is higher." (*Ibid.*)

In 1994, plaintiffs bought a 40-acre parcel of land known as the Cotton-wood property located within the Last Chance Creek Open Range designation of the ordinance.[4] From 1995 to 2000 and again in 2003, the Wemples received forest service permits to lease land adjacent to plaintiffs' Cotton-wood property and they grazed their cattle, including four bulls, on or near plaintiffs' property. Plaintiffs' property was physically damaged (trampled and defecated upon) as the result of the Wemples's cattle trespassing on their property. The Wemples did not pay plaintiffs for the use of plaintiffs' land and plaintiffs' attempts to contact the Wemples for payment went unanswered.

On April 8, 2004, plaintiffs filed their complaint against the Wemples and the County. Plaintiffs sued the Wemples for trespass and nuisance. Plaintiffs sought injunctive relief against both the Wemples and the County. As to the County only, the plaintiffs alleged five additional causes of action—taxpayer relief, declaratory relief, inverse condemnation, violation of civil rights and preemption by state law.

---

[1] Hereafter, undesignated section references refer to the Plumas County Municipal Code.

[2] Section 9-6.01 states: "All lands of any character not enclosed by a lawful fence, which lands lie within the boundaries of the areas designated in Section 9-6.05 of this chapter, are declared to be areas devoted chiefly to grazing pursuant to the authority vested in the Board [of Supervisors] by the provisions of Section 17124 of the Food and Agricultural Code of the State."

[3] Section 9-6.04, subdivision (b), of the ordinance states: "Within the areas described in Section 9-6.05 of this chapter, no person shall have the right to take up an estray animal found upon his premises, or upon premises to which he has the right of possession, nor shall he have a lien thereon, unless the premises are entirely enclosed with a lawful fence."

[4] As this appeal is from a judgment of dismissal after the trial court sustained without leave to amend the County's demurrer, we state the facts as alleged in plaintiff's complaint.

Plaintiffs generally alleged the ordinance improperly shifted the burden of animal grazing from cattle ranchers to private property owners falling within the open ranges. Specifically, plaintiffs' property had been trampled, defecated upon, and damaged by the freely roaming cattle. The burden of figuring out to whom the cattle belonged, collecting a reasonable rental fee, and erecting a lawful fence if the owner wanted to keep the cattle out, fell on the owner. Plaintiffs also alleged the value of their property was significantly diminished subsequent to the enactment of the ordinance.

As to the County, plaintiffs alleged the ordinance was an unconstitutional taking of their property under the Fifth Amendment to the United States Constitution and section 19 of article I of the California Constitution, deprived the plaintiffs of the privileges and immunities owed to them under the federal Constitution, deprived plaintiffs of substantive and procedural due process under the Code of Civil Procedure, the state and the federal Constitutions, violated plaintiffs' constitutional rights to equal protection, and was preempted by state law prohibiting the enactment of any measure constituting commercial rent control.

The County demurred to the complaint on the ground that each cause of action failed to state facts sufficient to constitute a cause of action against the County. (Code Civ. Proc., § 430.30.)

The trial court agreed with the County and sustained the County's demurrer to the third through eighth causes of action without leave to amend. A signed written order, constituting a judgment, was subsequently entered and filed dismissing the County from the action. (Code Civ. Proc., § 581d.) Plaintiffs timely appealed.

## DISCUSSION

### I.

### General Background to California's "Fencing Out" and "Fencing In" Laws

"At common law, 'every unwarrantable entry on another's soil the law entitles a trespass *by breaking his close, . . .*' [Citation.] And this was true whether the land was inclosed or uninclosed . . . ." (*Blevins v. Mullally* (1913) 22 Cal.App. 519, 523 [135 P. 307], original italics.) Under the common law rule, the party was "answerable not only for his own trespass, but that of his cattle." (*Ibid.*)

This rule of common law requiring owners of cattle to keep them confined to their own close was, however, abrogated in the first session of the California Legislature in 1850 by an enactment (commonly referred to as a "fencing out" statute) limiting the right to take up livestock "estrays"[5] to plaintiffs who maintain a proper fence around their land. (Stats. 1850, ch. 49, p. 131; *Waters v. Moss* (1859) 12 Cal. 535, 538; *Shively v. Dye Creek Cattle Co.* (1994) 29 Cal.App.4th 1620, 1629, fn. 3 [35 Cal.Rptr.2d 238]; *Williams v. Goodwin* (1974) 41 Cal.App.3d 496, 502–503 [116 Cal.Rptr. 200]; *Davis v. Blasingame* (1919) 40 Cal.App. 458, 459 [181 P. 104]; *Blevins v. Mullally, supra,* 22 Cal.App. at p. 524.) "Before the discovery of the gold mines [California] was exclusively a grazing country; its only wealth consisting in vast herds of cattle, which were pastured exclusively upon uninclosed lands. This custom continued to prevail after the acquisition of the country by the United States. . . ." (*Waters v. Moss, supra,* at p. 538.) Traditional open range grazing allowed the moving of cattle to and from summer and winter pasturage. (Ellickson, *Of Coase and Cattle: Dispute Resolution Among Neighbors in Shasta County* (1986) 38 Stan.L.Rev. 623, 637–638.) For a time, the "fencing out" rule (the landowner builds a fence to keep the cattle out), and not the common law "fencing in" rule (the cattle owner builds a fence to keep his cattle in), applied to all the land in California. (*Davis v. Blasingame, supra,* at p. 459.)

Starting in 1863, as conditions within the state changed from a pastoral to an agricultural or horticultural use of the land, the common law rule of fencing in cattle began to be restored to particular areas and counties within California. (*Williams v. Goodwin, supra,* 41 Cal.App.3d at p. 503; *Davis v. Blasingame, supra,* 40 Cal.App. at p. 459.) Eventually the common law rule exceptions became so numerous a comprehensive legislative response was triggered. (Ellickson, *Of Coase and Cattle: Dispute Resolution Among Neighbors in Shasta County, supra,* 38 Stan.L.Rev. at pp. 660–661.) The Estray Act of 1915 (Stats. 1915, ch. 397, p. 636) repealed all "fencing out" laws and restored the common law requiring "fencing in" for all but the six northernmost counties of Del Norte, Lassen, Modoc, Shasta, Siskiyou, and Trinity. (*Montezuma Improv. Co. v. Simmerly* (1919) 181 Cal. 722, 726 [189 P. 100].) The County of Del Norte was dropped from the "fencing out" counties in 1931. (Stats. 1931, ch. 648, § 1, p. 1389.)

The California Legislature continued the existing "estray" provisions when it adopted the Agriculture Code in 1933. (Stats. 1933, ch. 25, § 391, p. 124,

---

[5] "The term 'estrays' at common law had the well-defined meaning of animals found wandering at large, whose ownership was unknown." (*Yraceburn v. Cape* (1923) 60 Cal.App. 374, 379 [212 P. 938].)

§ 401, pp. 126–127.) However, the Legislature added at the same time a provision allowing voters of a supervisorial district to optionally adopt the "fencing out" laws. (Stats. 1933, ch. 25, §§ 411–415, pp. 127–128.) In 1953, the authority to optionally declare an area of land to be "devoted chiefly to grazing" was transferred to the county board of supervisors. (Stats. 1953, ch. 939, § 6, p. 2312.) At that time, the county board of supervisors' authority to declare an area to be grazing land became Food and Agriculture Code section 17124. (Stats. 1967, ch. 15, § 2, p. 241.) The ordinance in this case was adopted by the County's Board of Supervisors in 1982 pursuant to this statutory authority.

■ The right to recover trespass damages has been consistently linked to the right to seize estrays governed by fencing laws. (*Hahn v. Garratt* (1886) 69 Cal. 146, 149 [10 P. 329]; *Williams v. Goodwin, supra,* 41 Cal.App.3d at p. 503; 39 Ops.Cal.Atty.Gen. 75 (1962).) Therefore, if "fencing out" laws apply, the person in possession of unfenced land may neither seize estrays nor sue for trespass or injunctive relief. (39 Ops.Cal.Atty.Gen., *supra,* at p. 75.) An exception may exist, however, if animals are affirmatively herded onto the other person's unfenced property, that is, a person has intentionally driven them to and collected them upon such land. (*Logan v. Gedney* (1869) 38 Cal. 579, 581; *Cramer v. Jenkins* (1927) 82 Cal.App. 269, 274–276 [255 P. 877]; see *Light v. United States* (1911) 220 U.S. 523, 537 [55 L.Ed. 570, 574, 31 S.Ct. 485]; *Elquist v. Rasmussen* (10th Cir. 1967) 381 F.2d 323, 324–325.) A trespass action may still be available for such deliberate incursion onto another's property.[6]

■ An uncodified statute is applicable in Plumas County to the question of whether a person in possession of unfenced land may sue for intentional, as opposed to negligent, trespass.[7] In 1919 the California Legislature enacted a statute entitled "An act to prevent trespass upon real estate by live stock" providing, in relevant part: "It shall be unlawful for any person or persons *to herd or graze any live stock upon the lands of another in* the counties of *Plumas,* Lassen and Modoc *without* having first obtained *the consent of the owner* or owners of the land so to do[.]" (Stats. 1919, ch. 284, § 1, p. 464, italics added.) If livestock is herded or grazed on another person's property in violation of this statute, the owner of the livestock is liable for "all damages

---

[6] Trespass "may be committed by an act which is intentional, reckless or negligent . . . . [Citation.] The only intent required is an intent to enter, regardless of the actor's motivation." (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 604, p. 704.)

[7] At our request the parties have submitted supplemental briefing addressing the effect of an uncodified statute, Statutes 1919, chapter 284, page 464, on plaintiffs' stated causes of action against the County.

done by said live stock . . . together with costs of suit, and said live stock may be seized" as estrays. (Stats. 1919, ch. 284, § 2, p. 464.)

■ Section 3 of this statute provides the act is not applicable to "any live stock running at large on the ranges or commons." (Stats. 1919, ch. 284, § 3, p. 464.) It has been held that when herders are in charge of animals, those animals are not considered to be "running at large." (*Spect v. Arnold* (1877) 52 Cal. 455, 457; *Cramer v. Jenkins, supra,* 82 Cal.App. 269, 273.) To put it a different way, animals are "running at large" when they are moving onto or across property on their own and not as the result of some intentional human conduct.

■ Although this statute was never codified, it has never been repealed or amended. Nor has the statute been repealed by implication since it can be read consistently together with the "fencing out" laws. (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 569 [71 Cal.Rptr.2d 731, 950 P.2d 1086] [" ' "[T]he presumption against implied repeal is so strong that, '[t]o overcome the presumption the two acts must be irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together' " ' "].) The uncodified statute remains good law.[8] Therefore, as to the named counties at a minimum, "fencing out" laws do not limit the right to sue for damages from the intentional herding or grazing of livestock without the consent of the owner. (Stats. 1919, ch. 284, § 2, p. 464; *Cramer v. Jenkins, supra,* 82 Cal.App. at pp. 274–276.)

It is in the context of these laws plaintiffs' dispute with their neighbors and the County arose.

---

[8] Plaintiffs take the position that the 1919 statute remains good law and has not been implicitly repealed by subsequent legislation because the statute is not irreconcilable with the later legislation regarding open ranges. (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc., supra,* 17 Cal.4th at p. 569.) Plaintiffs argue, however, the statute does not affect their claims against the County because section 3 of the statute expressly exempts cattle grazing at large on the ranges. The County contends, on the other hand, the statute has been repealed by implication, but nevertheless provides historical perspective and context for the issues in this case. The County also claims the statute reinforces its argument "that the open range policy creates no right in a third party to enter upon or use [plaintiffs'] property." We agree with plaintiffs that the statute is not so inconsistent with later legislation as to have been repealed by implication, but disagree with plaintiffs regarding its effect. We agree with County that a person is precluded from intentionally herding or grazing cattle on another's property without the owner's consent.

## II.

## Standard of Review

Our review of the trial court's actions in sustaining the County's demurrer without leave to amend is governed by well-settled principles. " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171], quoting *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Our review of the legal sufficiency of the complaint is de novo, "i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law. [Citation.]" (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790 [90 Cal.Rptr.2d 598].)

We are concerned in this appeal only with the causes of action stated against the County. Accordingly, we consider only the arguments concerning those causes of action which are stated against the County: the third, fourth, fifth, sixth, seventh, and eighth. The remaining allegations, not alleged against the County, do not state causes of action upon which relief may be granted against the County as a matter of law. (Code Civ. Proc., § 430.10, subd. (e).)

## III.

## Allegations of an Unconstitutional Taking (the Third, Sixth, and a Portion of the Seventh Causes of Action For Injunctive Relief, Inverse Condemnation and a Civil Rights Violation Respectively)

A. *Applicable Legal Principles*

Both the state and federal Constitutions guarantee real property owners "just compensation" when their land is "taken . . . for public use

. . . ." (Cal. Const., art. I, § 19; see U.S. Const., 5th Amend.) The Fifth Amendment takings clause is made applicable to the states through the Fourteenth Amendment. (*Palazzolo v. Rhode Island* (2001) 533 U.S. 606, 617 [150 L.Ed.2d 592, 606, 121 S.Ct. 2448]; *Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761, 773 [66 Cal.Rptr.2d 672, 941 P.2d 851] (*Kavanau*).) The California Constitution also requires just compensation when private property is "damaged for public use." (Cal. Const., art. I, § 19.) "By virtue of including 'damage[]' to property as well as its 'tak[ing],' the California clause 'protects a somewhat broader range of property values' than does the corresponding federal provision." (*San Remo Hotel v. City and County of San Francisco* (2002) 27 Cal.4th 643, 664 [117 Cal.Rptr.2d 269, 41 P.3d 87].) Apart from that difference, however, the California Supreme Court has construed the state clause congruently with the federal clause. (*Ibid.*)

It has been recognized "[e]ven the wisest lawyers would have to acknowledge great uncertainty about the scope of [the United States Supreme Court's] takings jurisprudence." (*Nollan v. California Coastal Comm'n* (1987) 483 U.S. 825, 866 [97 L.Ed.2d 677, 707, 107 S.Ct. 3141] (dis. opn. of Stevens, J.) (*Nollan*).) Nevertheless, some general rules have taken shape in recent years and have just been clarified by the United States Supreme Court.

When the government physically takes possession of an interest in property or authorizes a physical invasion of property by a third party for a public purpose, the United States Supreme Court has indicated the government has a " 'categorical duty' " to compensate the owner for a taking. (*Brown v. Legal Foundation of Wash.* (2003) 538 U.S. 216, 233 [155 L.Ed.2d 376, 393, 123 S.Ct. 1406]; accord, *Lingle v. Chevron U.S.A. Inc.* (2005) 544 U.S. 528, 537 [161 L.Ed.2d 876, 887, 125 S.Ct. 2074] (*Lingle*); *Loretto v. Teleprompter Manhattan CATV Corp.* (1982) 458 U.S. 419, 432 [73 L.Ed.2d 868, 880, 102 S.Ct. 3164] (*Loretto*).) This per se rule recognizes an owner's right to exclude others as "one of the most essential sticks in the bundle of rights that are commonly characterized as property." (*Kaiser Aetna v. United States* (1979) 444 U.S. 164, 176 [62 L.Ed.2d 332, 344, 100 S.Ct. 383].) A continuous right to traverse property is a physical occupation of the property for purposes of this rule. (*Nollan, supra,* 483 U.S. at p. 832 [97 L.Ed.2d at p. 686].)

Where the government action does not result in any physical invasion of property, the action will be considered a taking of property if the regulation deprives the owner of "all economically beneficial or productive use of [the] land." (*Lucas v. South Carolina Coastal Council* (1992) 505 U.S.

1003, 1015 [120 L.Ed.2d 798, 813, 112 S.Ct. 2886] (*Lucas*); see *Lingle, supra,* 544 U.S. 528, 537–538 [161 L.Ed.2d 876, 887–888].) "[T]he government must pay just compensation for such 'total regulatory takings,' except to the extent that 'background principles of nuisance and property law' independently restrict the owner's intended use of the property." (*Lingle, supra,* at p. 538 [161 L.Ed.2d at p. 888].)

In "the special context of land-use exactions" (*Lingle, supra,* 544 U.S. at p. 547 [161 L.Ed.2d at pp. 888, 893–894]), where the government requires a dedication of the property to public use as a condition of a discretionary permit, the government can demand the easement without paying compensation if the exaction of the easement will substantially advance the same governmental interest that would furnish a valid ground for denial of the permit. (*Ibid.*; *Nollan, supra,* 483 U.S. at p. 834 [97 L.Ed.2d at pp. 687–688].)[9] The adjudicative exaction imposed by the government must be " ' "roughly proportional" . . . to the impact of the proposed development.' " (*Lingle, supra,* at p. 547 [161 L.Ed.2d at p. 893]; see *Dolan v. City of Tigard* (1994) 512 U.S. 374, 391 [129 L.Ed.2d 304, 320, 114 S.Ct. 2309] (*Dolan*); see *San Remo Hotel v. City and County of San Francisco, supra,* 27 Cal.4th 643, 666.)

Otherwise, resolving whether the government's action works a taking involves what the United States Supreme Court has described as "essentially ad hoc, factual inquiries[.]" (*Penn Central Transp. Co. v. New York City* (1978) 438 U.S. 104, 124 [57 L.Ed.2d 631, 648, 98 S.Ct. 2646] (*Penn Central*); see *Lingle, supra,* 544 U.S. at pp. 538–539 [161 L.Ed.2d at p. 888].) Several factors have particular significance. Specifically, the economic impact of the regulation on the claimant, the extent to which the regulation has interfered with distinct investment-backed expectations, and the character of the governmental action are relevant considerations. (*Penn Central, supra,* at p. 124 [57 L.Ed.2d at p. 648].) These three inquiries aim "to identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain. Accordingly, each of these tests focuses directly upon the severity of the burden that government imposes upon private property rights." (*Lingle, supra,* 544 U.S. at p. 539 [161 L.Ed.2d at p. 888].) "[T]he *Penn Central* inquiry turns in large part, albeit not exclusively, upon the magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests." (*Id.* at pp. 539–540 [161 L.Ed.2d at pp. 888–889.)

---

[9] In *Lingle, supra,* 544 U.S. at p. 544 [161 L.Ed.2d at p. 892], the United States Supreme Court held that outside the land use exaction context "the 'substantially advances' formula is not a valid takings test."

The California Supreme Court has enumerated a number of other additional, nonexclusive factors, taken from United States Supreme Court cases, which might be relevant considerations in a particular case of alleged *Penn Central* regulatory taking. These include: "(1) whether the regulation 'interfere[s] with interests that [are] sufficiently bound up with the reasonable expectations of the claimant to constitute "property" for Fifth Amendment purposes' [citation]; (2) whether the regulation affects the existing or traditional use of the property and thus interferes with the property owner's 'primary expectation' [citation]; (3) 'the nature of the State's interest in the regulation' [citations] and, particularly, whether the regulation is 'reasonably necessary to the effectuation of a substantial public purpose' [citation]; (4) whether the property owner's holding is limited to the specific interest the regulation abrogates or is broader [citation]; (5) whether the government is acquiring 'resources to permit or facilitate uniquely public functions,' such as government's 'entrepreneurial operations' [citation]; (6) whether the regulation 'permit[s the property owner] . . . to profit [and] . . . to obtain a "reasonable return" on . . . investment' [citation]; (7) whether the regulation provides the property owner benefits or rights that 'mitigate whatever financial burdens the law has imposed' [citations]; (8) whether the regulation 'prevent[s] the best use of [the] land' [citation]; (9) whether the regulation 'extinguish[es] a fundamental attribute of ownership' [citation]; and (10) whether the government is demanding the property as a condition for the granting of a permit [citations]." (*Kavanau, supra,* 16 Cal.4th 761, 775–776.) The factors should not be used as checklist, but applied only as appropriate. (*Id.* at p. 776.) There is no " ' "set formula" ' " for identifying a taking. (*Lucas, supra,* 505 U.S. 1003, 1015 [120 L.Ed.2d 798, 812]; see *Loretto, supra,* 458 U.S. 419, 426 [73 L.Ed.2d 868, 876].)

We keep in mind "[t]hese inquiries are informed by the purpose of the Takings Clause, which is to prevent the government from 'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' [Citation.]" (*Palazzolo v. Rhode Island, supra,* 533 U.S. at pp. 617–618 [150 L.Ed.2d at p. 607]; see *Yee v. City of Escondido* (1992) 503 U.S. 519, 522–523 [118 L.Ed.2d 153, 162, 112 S.Ct. 1522].)

B. *Sufficiency of Plaintiffs' Allegations of a Taking*

In a patchwork of allegations throughout their complaint plaintiffs allege an unconstitutional taking without just compensation by the County. We find plaintiffs' specific allegations of a taking in the third, sixth, and a portion of the seventh causes of action.

The Plaintiffs' third cause of action seeks injunctive relief against the County's unlawful actions. The complaint alleges a number of actions and inactions by the County, but principally alleges the County is unlawfully violating the United States Supreme Court decisions in *Loretto, supra,* 458 U.S. 419 [73 L.Ed.2d 868], *Nollan, supra,* 483 U.S. 825 [97 L.Ed.2d 677], and *Dolan, supra,* 512 U.S. 374 [129 L.Ed.2d 304], all cases involving the physical occupation of property or the special context of land use exactions requiring the dedication of an easement allowing physical invasions of property in violation of the Takings Clause of the Fifth Amendment of the United States Constitution. The third cause of action incorporates all the other allegations of the complaint, including the factual allegations described, above, in the "FACTUAL AND PROCEDURAL BACKGROUND."

Plaintiffs' sixth cause of action for inverse condemnation alleges the actions of the County have damaged plaintiffs' private property and so constitute an unlawful taking of property in violation of article I, section 19 of the California Constitution. Plaintiffs allege, "[d]efendants sacrificed the economic interests of plantiffs to benefit defendants." These actions "constitute a direct, substantial, and peculiar burden on the plaintiffs' property interests." Further, "defendants failed to advance a legitimate state interest, imposed burdens on plaintiffs that more fairly should be placed on the public at large, deprived plaintiffs of viable use and value of their property interests, and caused the damages alleged herein." The cause of action incorporates all the other allegations of the complaint as before.

Plaintiffs' seventh cause of action alleges a civil rights violation under section 1983 of title 42 of the United States Code (section 1983). Plaintiffs allege defendant's actions "were unreasonable, arbitrary, capricious, and irrational exercises of defendant['s] police power in violation of the takings, privileges and immunities, due process, and equal protection clauses of the First, Fifth, and Fourteenth Amendments." With respect to the takings clause, plaintiffs specifically allege the County's actions have damaged plaintiffs' private property interests while no public use is served by such conduct. Plaintiffs repeat the allegations from their sixth cause of action regarding defendants sacrificing plaintiffs' economic interest, causing a direct, substantial, and peculiar burden on plaintiffs' property interests, failing to advance a legitimate state or public interest, causing the imposition of burdens on plaintiffs that should be borne by the public, and depriving plaintiffs of the viable use and value of their property. Plaintiffs add in their seventh cause of action that the "unlawful conduct by defendants lacks the essential nexus to, and is not roughly proportional to, any necessary environmental mitigation or to any adverse impact on the public interest." The prohibitions and limitations on plaintiffs' use and enjoyment of their property

do not "substantially advance or have any nexus with any legitimate government interest."

In their opposition to the County's demurrer and here on appeal, plaintiffs contend their complaint sufficiently alleges an unconstitutional taking based on the ordinance forcing plaintiffs to accept the physical invasion of their property by their neighbor's cattle.

C. *Discussion of Plaintiff's Allegations of a Taking*

 "The government effects a physical taking only where it *requires* the landowner to submit to the physical occupation of his land." (*Yee v. City of Escondido, supra,* 503 U.S. 519, 527 [118 L.Ed.2d 153, 165].) Plaintiffs are not *required* by the ordinance to allow cattle onto their property. (See *Moerman v. California* (1993) 17 Cal.App.4th 452, 459 [21 Cal.Rptr.2d 329].) Plaintiffs may fence out the cattle with a lawful fence as defined in section 9-6.02 of the ordinance.

Such a fence itself would not be, as plaintiffs contend, a physical occupation of their land equivalent to the installed cable box at issue in *Loretto.* Unlike the situation in *Loretto*, any fence, should plaintiffs decide to fence the property, would be erected by plaintiffs, its placement controlled by plaintiffs and would be owned and maintained as part of plaintiffs' property. Providing such fencing alternative is not, as plaintiffs argue, an unconstitutional prescription of their use of their property, manipulating their right as owners to exclusive possession within the meaning of *Loretto, supra,* 458 U.S. 419 [73 L.Ed.2d 868]. In *Loretto,* the Supreme Court rejected the argument that owners could avoid having the cable equipment at issue installed simply by not renting their property. (*Id.* at p. 439, fn. 17 [73 L.Ed.2d at p. 884, fn. 17].) The Supreme Court stated, "a landlord's ability to rent his property may not be conditioned on his forfeiting the right to compensation for a physical occupation." (*Ibid.*) No similar use restriction or condition is involved here.

Plaintiffs also cite *Smith v. Bivens* (C.C.D.S.C. 1893) 56 Fed. 352 for support of their claim that requiring a fence to keep livestock out deprives them of their right to exclusive possession. That case involved the State of South Carolina's adoption of a type of "fencing out" statute for certain territory in Colleton County, the effect of which was to essentially deprive the contesting owner of the only economically viable use of his property. The circuit court not surprisingly found an unconstitutional taking and granted an injunction, basing the decision on a South Carolina Supreme Court case decision (*Fort v. Goodwin* (1892) 36 S.C. 445 [15 S.E. 723]) finding another

state statute that created a public pasture from a section of private lands and required the construction of a fence around all of it was an unconstitutional taking. (*Smith v. Bevins, supra,* at pp. 355–357.) The facts, statutes, and historical use of the property before these courts was materially different to what is before us. Their decisions are neither binding nor applicable here.[10]

This case does not involve any land use permit sought by plaintiffs on which the County seeks to impose a condition requiring the dedication of any property interest for public use or other exaction. (*Lingle, supra,* 544 U.S. at pp. 539, 546–547 [161 L.Ed.2d at pp. 888, 893–894]; *Nollan, supra,* 483 U.S. 825 [97 L.Ed.2d 677]; *Dolan, supra,* 512 U.S. 374 [129 L.Ed.2d 304]; *San Remo Hotel v. City and County of San Francisco, supra,* 27 Cal.4th 643.)

Nor does the County ordinance deprive plaintiffs of "all economically beneficial or productive use" of their land. (*Lucas, supra,* 505 U.S. 1003, 1015 [120 L.Ed.2d 798, 813].)

What remains is plaintiffs' allegation of or ability to adequately plead, if granted leave to amend, an unconstitutional regulatory taking under the ad hoc analysis courts have traditionally employed. (*Penn Central, supra,* 438 U.S. 104, 124 [57 L.Ed.2d 631, 648]; *Kavanau, supra,* 16 Cal.4th 761, 775–776.) Although ordinarily this analysis requires a factual inquiry, which may preclude a ruling on demurrer (*Cwynar v. City and County of San Francisco* (2001) 90 Cal.App.4th 637, 666–667 [109 Cal.Rptr.2d 233]), we conclude the trial court here properly concluded plaintiffs have not and could not plead a regulatory taking as a matter of law. (See, e.g., *Long Beach Equities, Inc. v. County of Ventura* (1991) 231 Cal.App.3d 1016 [282 Cal.Rptr. 877].)

The "fencing out" ordinance of the County recognizes and substantially fosters the important historic, traditional and economic use of rural property in California for open grazing land, a legitimate governmental purpose. (*Penn Central, supra,* 438 U.S. at p. 124 [57 L.Ed.2d at p. 648]; *Kavanau, supra,* 16 Cal.4th at p. 776 [requiring purpose and character of government action be considered].) The ordinance directly authorizes this traditional use to continue within the designated areas identified as devoted chiefly to grazing. Plaintiffs do not allege or suggest this effects a change in the actual existing use of the land in the designated areas, which apparently have continued to be primarily grazing land despite the adoption of the general "fencing in" rule for the County at large. (*Kavanau, supra,* 16 Cal.4th 761, 775 [factor two regarding existing or traditional use of the property].)

---

[10] Moreover, the legal analysis applicable to takings issues has developed significantly since the 1800's.

The "fencing out" ordinance does not require property owners to fence their property, although it directs them to do so if they decide they do not want other people's cattle on their land at all. If owners choose not to fence because of the expense, aesthetics, or other personal reasons, the owners are not forced to accept any intentional herding or grazing of other people's cattle on their land, as we have explained *ante*. They are only precluded from seizing livestock wandering at large or suing for negligent trespass damages. They can still try to move the cattle off their property. They can still contact the cattle owners, if known, to ask them to move their cattle along. If the cattle are still persistently and regularly present on the property after notification to the owners, a cause of action for intentional trespass and injunction may eventually ripen.[11] The landowners may thereby prevent the acquisition of any prescriptive rights. In the alternative, the landowners may choose, under the terms of section 9-6.04 of the ordinance, to allow the intentional pasturing of cattle on their property in exchange for a reasonable rental fee.

Therefore, the only potential economic burden of this ordinance is the occasional use of and damage to property caused by wandering cattle as they move on. Plaintiffs have not shown, nor can we perceive how plaintiffs could show, this limited burden interferes with their reasonable investment-backed expectations in buying this particular property within a traditional open grazing area when plaintiffs can always avoid it by fencing their property. (*Penn Central, supra,* 438 U.S. at p. 124 [57 L.Ed.2d at p. 648].)[12]

To the extent property owners within the Last Chance Creek Open Range choose not to fence their property and to bear the occasional burden of cattle on their property, such owners have reciprocal rights with respect to all the other unfenced land in the area if they choose to raise cattle and obtain any applicable permits. (*Kavanau, supra,* 16 Cal.4th at p. 775 [factor seven regarding rights and benefits that mitigate the finacial burden of the regulation].) The ordinance does not itself limit plaintiffs' best, or any, use of their property. (16 Cal.4th at p. 775 [factor eight regarding whether the regulation

---

[11] Intentionally leaving animals in a range from which they are substantially certain to trespass onto another person's property may amount to tortious misconduct. (*Cramer v. Jenkins, supra,* 82 Cal.App. at p. 273.)

[12] In a related argument regarding their sixth and seventh causes of action, plaintiffs complain the trial court improperly concluded there was no taking because plaintiffs bought their property with notice of the ordinance and statute. Plaintiffs argue a successive title holder is not precluded from challenging an unreasonable government enactment. (*Palazzolo v. Rhode Island, supra,* 533 U.S. at p. 627 [150 L.Ed.2d at p. 613].) We do not consider the trial court's reasoning, but review the ruling on the County's demurrer de novo. (*Montclair Parkowners Assn. v. City of Montclair, supra,* 76 Cal.App.4th at p. 790.) We do not conclude successive property owners may not challenge an unreasonable enactment. Here, however, the ordinance is not unreasonable.

prevents the best use of the land].) Nor does it extinguish any fundamental attribute of ownership. (*Ibid.* [factor nine].)

The County's "fencing out" ordinance simply does not unconstitutionally " 'forc[e] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " (*Palazzolo v. Rhode Island, supra,* 533 U.S. at p. 618 [150 L.Ed.2d at p. 607], citing *Armstrong v. United States* (1960) 364 U.S. 40, 49 [4 L.Ed.2d 1554, 1561, 80 S.Ct. 1563].)

■■■ The ordinance is not a taking under either the state or federal Constitutions. The trial court did not err in sustaining the County's demurrer to plaintiffs' third, sixth, and the takings portion of plaintiffs' seventh causes of action without leave to amend.

## IV.

### Allegations of Violation of Civil Rights under 42 U.S.C. § 1983 (Remainder of Seventh Cause of Action)

A. *Privileges and Immunities Clause*

In their seventh cause of action for violation of their civil rights under section 1983, plaintiffs briefly allege, in addition to their takings claim, that the County's "additional actions" deprived them of the privileges and immunities owed to them under section 1 of the Fourteenth Amendment of the United States Constitution.

Plaintiffs did not oppose the County's demurrer to this portion of their seventh cause of action and have submitted no argument on the issue in their briefs on appeal. Accordingly, we deem plaintiffs to have abandoned the issue. (*Arnold v. Dow Chemical Co.* (2001) 91 Cal.App.4th 698, 729 [110 Cal.Rptr.2d 722].)

B. *Due Process*

In their seventh cause of action for violation of their civil rights under section 1983, plaintiffs also briefly allege, in addition to their takings claim, that the County's "further actions deprived the plaintiffs of substantive and procedural due process protection, including the right to be heard, under the Code of Civil Procedure, the California Constitution, and the United States Constitution." On appeal plaintiffs only argue they have adequately stated a procedural due process claim. Plaintiffs have, therefore, abandoned their

claim regarding substantive due process. (*Arnold v. Dow Chemical Co., supra,* 91 Cal.App.4th at p. 729.)[13]

With respect to their procedural due process claim, plaintiffs contend they have adequately alleged their property has been unconstitutionally taken and that they have never been granted a hearing or right to be heard "regarding the encroachment upon their property rights."

We have previously concluded the County's ordinance is not an unconstitutional taking of plaintiffs' property under either the Fifth Amendment or the California Constitution and plaintiffs do not allege how the County has denied them a right to be heard regarding the ordinance. Plaintiffs have not challenged the ordinance as improperly adopted by the County without public notice or opportunity for the public to be heard. (See Gov. Code, § 54950 et seq.) We conclude plaintiffs have not adequately stated a claim for violation of their procedural due process rights.

C. *Equal Protection*

Plaintiffs next allege, as part of their seventh cause of action for violation of their civil rights under section 1983, that the County's "additional activities treated the plaintiffs differently from others similarly situated thus denying plaintiffs equal protection under the California Constitution and United States Constitution and favored defendants' own interests over those of the plaintiffs."

Plaintiffs contend on appeal, as they did below, the County has treated them differently from others similarly situated because of the operation of the ordinance with section 9-2.1802, subdivision (b)(2) (section 9-2.1802(b)(2)).[14] Specifically, section 9-2.1802(b)(2) requires plaintiffs as owners of property zoned R-20 to obtain a special use permit if they wish to conduct commercial animal husbandry upon their property. Commercial animal husbandry is defined by section 9-2.208 to "mean the care and raising of hoofed livestock." If plaintiffs raise cattle on their property without a special permit, plaintiffs would be in violation of section 9-2.1802(b)(2), an infraction at least under section 9-2.1203. According to plaintiffs, however, neighboring cattle ranchers could conduct commercial animal husbandry on plaintiffs' property without a special permit because of the operation of the

---

[13] And even if they had not, it is clear the ordinance is not so arbitrary or irrational as to violate due process. (*Lingle, supra,* 544 U.S. at pp. 548–549 [161 L.Ed.2d at pp. 894–895] (conc. opn. of Kennedy, J.).)

[14] Although not alleged specifically in the complaint, we consider these particular claims as plaintiffs' showing of how the complaint could be amended if leave was granted. (*Zelig v. County of Los Angeles, supra,* 27 Cal.4th at p. 1126.)

ordinance allowing other people's cattle to graze on plaintiffs' property. Plaintiffs might even be held liable for violating section 9-2.1802(b)(2) by reason of other people's cattle being on their property. Plaintiffs reason this is a denial of equal protection because there is no rational basis for distinguishing between plaintiffs and their neighboring cattle owners.

Plaintiffs' argument is premised on the assumption the ordinance allows other people to care for and raise their cattle on plaintiffs' property. In fact, the law does not permit intentional herding or grazing of livestock on another person's land without that person's consent. (Stats. 1919, ch. 284, § 1, p. 464; *Cramer v. Jenkins, supra,* 82 Cal.App. at pp. 274–276.) Plaintiffs' neighbors cannot intentionally use plaintiffs' property for the care and raising of their cattle. That is, the ordinance does not permit others to conduct commercial animal husbandry on plaintiffs' property. The occasional straying of cattle onto plaintiffs' property would not amount to the care and raising of hoofed livestock on plaintiffs' property in violation of section 9-2.1802(b)(2). Therefore, there is no equal protection problem.

The trial court did not err in sustaining the County's demurrer to plaintiffs' seventh cause of action without leave to amend.

## V.

### Allegations of State Law Preemption (Eighth Cause of Action)

In their eighth cause of action plaintiffs allege the enactment and enforcement of the ordinance allows for commercial rent control in direct conflict with Civil Code section 1954.27, subdivision (a), violating section 7 of article XI of the California Constitution limiting county authority to the enactment of ordinances and regulations "not in conflict with general laws."

Civil Code section 1954.27, subdivision (a) provides: "No public entity shall enact any measure constituting commercial rental control, nor shall any public entity enforce any commercial rental control . . . ." Section 1954.26, subdivision (f), of the Civil Code defines commercial rental control, in relevant part, as "any action of a public entity taken by . . . ordinance . . . to establish, continue, implement, or enforce any control or system of controls, on the price at which . . . commercial real property may be offered for rent . . . ."

Section 9-6.04, subdivision (a) (section 9-6.04(a)) of the ordinance provides: "The person having the ownership or rightful possession of such unfenced land in the areas described in Section 9-6.05 of this chapter shall be

entitled to a reasonable rental fee from any person who pastures livestock thereon. 'Reasonable rental' is defined as at least AUM (values used for Williamson Act contracts in the area) or Forest Service lease fees in the allotment area, whichever is higher."

Plaintiffs claim section 9-6.04(a) constitutes illegal commercial rent control because it "interferes with [plaintiffs'] ability to negotiate rent from graziers at a price dictated by market conditions. Said controls also discourage competition in the open market by giving artificial price benefits to one enterprise to the disadvantage of another." Not so.

■ Section 9-6.04(a) provides for a reasonable rental fee of "at least" the highest of two different analogous fees in the area. It does not restrict the right of an owner or person in rightful possession of the property to negotiate a rental fee higher than the highest of the two referenced fees as may be dictated by any prevailing market conditions. An owner or possessor retains realistic bargaining power to engage in such negotiations because the owner or possessor can always refuse to allow the intentional grazing of livestock on the property. (Stats. 1919, ch. 284, § 1, p. 464; *Cramer v. Jenkins, supra,* 82 Cal.App. at pp. 274–276.) Section 9-6.04(a) does not establish any control or system of controls on the price of pasturage in the open grazing areas. It only puts in place a floor, not a ceiling, on the reasonable rent for pasturage in those areas.

The trial court did not err in sustaining the County's demurrer to plaintiffs' eighth cause of action without leave to amend.

## VI.

### Allegations for Taxpayer Relief (Fourth Cause of Action)

Plaintiffs' fourth cause of action is based on Code of Civil Procedure section 526a which allows an action to restrain and prevent any "illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county . . . ."[15]

■ "[I]n order to obtain injunctive relief in an action brought under Code of Civil Procedure section 526a, the taxpayer must establish that the

---

[15] Plaintiffs' complaint contains no specific allegations regarding the expenditures sought to be enjoined by this action. The fourth cause of action contains only general allegations and legal conclusions, which are not sufficient to support a taxpayer action. (*Waste Management of Alameda County, Inc. v. County of Alameda* (2000) 79 Cal.App.4th 1223, 1240 [94 Cal.Rptr.2d 740].) Again, we consider the particular claims of illegal expenditures made by the County in plaintiffs' opposition to the County's demurrer and on appeal as plaintiffs' showing of how the complaint could be amended if leave was granted. (*Zelig v. County of Los Angeles, supra,* 27 Cal.4th at p. 1126.)

expenditure of public funds which he seeks to enjoin is illegal." (*National Organization for Reform of Marijuana Laws v. Gain* (1979) 100 Cal.App.3d 586, 598–599 [161 Cal.Rptr. 181].) We have rejected each of plaintiffs' claims of illegal action by the County in connection with the ordinance. It follows that there has been no "illegal expenditure" by the County in connection with the ordinance. The trial court did not err in sustaining the County's demurrer to plaintiffs' fourth cause of action without leave to amend.

## VII.

### Allegations for Declaratory Relief (Fifth Cause of Action)

Plaintiffs' fifth cause of action for declaratory relief alleges an actual controversy has arisen between the parties and seeks "a judicial determination of their rights and duties as to said unlawful conduct of defendants."

"Strictly speaking, a general demurrer is not an appropriate means of testing the merits of the controversy in a declaratory relief action because plaintiff is entitled to a declaration of his rights even if it be adverse." (*Taschner v. City Council* (1973) 31 Cal.App.3d 48, 57 [107 Cal.Rptr. 214], overruled on a different ground in *Associated Home Builders Etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 596, fn. 14 [135 Cal.Rptr. 41, 557 P.2d 473]; accord, *Maguire v. Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 728 [146 P.2d 673].) However, "where the issue is purely one of law, if the reviewing court agreed with the trial court's resolution of the issue it would be an idle act to reverse the judgment of dismissal for a trial on the merits. In such cases the merits of the legal controversy may be considered on an appeal from a judgment of dismissal following an order sustaining a demurrer without leave to amend and the opinion of the reviewing court will constitute the declaration of the legal rights and duties of the parties concerning the matter in controversy." (*Taschner v. City Council, supra,* at p. 57; accord, *Bach v. McNelis* (1989) 207 Cal.App.3d 852, 872–873 [255 Cal.Rptr. 232]; 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 832(b), pp. 291–292.)

Since we have rejected the merits of plaintiffs' claims regarding the unconstitutionality and illegality of the ordinance and concluded the trial court did not err in sustaining the County's demurrer to all of plaintiffs' other causes of action without leave to amend, this opinion will constitute the declaration of the legal rights and duties of the parties concerning such controversy.

## DISPOSITION

The judgment is affirmed. Costs are awarded to respondent pursuant to California Rules of Court, rule 27(a).

Davis, Acting P. J., and Morrison, J., concurred.